## A97A1499. REDD v. THE STATE.

### (494 SE2d 31)

SMITH, Judge.

Alan Carter Redd was indicted on one count of possession of methamphetamine, OCGA §§ 16-13-30 (a), 16-13-26 (3) (B), and one count of obstruction of a law enforcement officer, OCGA § 16-10-24 (a). After his motion to suppress was denied, he stipulated to the remainder of the evidence and waived jury trial. At a bench trial, Redd was acquitted of obstruction of an officer but convicted of possession of methamphetamine. He appeals the judgment of conviction and sentence, contending in his sole enumeration of error that the trial court erred in denying his motion to suppress. We disagree and affirm.

Construed to support the trial court's ruling, the evidence shows that an unidentified citizen came in person to the Cumming Police Department and reported that he had seen a man walking along a local highway and removing mail from a mailbox. He gave a detailed description of the man and his clothing. This information was dispatched by radio to a patrol officer who observed a man, later identified as Redd, walking along the highway in the location reported. According to the officer, Redd fit the description given by the dispatcher "to a tee." The officer notified the dispatcher that he had located the individual and turned his vehicle around to speak to Redd, but Redd turned and began walking in the opposite direction.

The officer called to Redd and asked him what he was doing, but, according to the officer, "He really didn't answer me." The officer explained to Redd that he had stopped him to inquire about someone taking mail from mailboxes and that "we could clear the problem up real quick if he'd give me consent to search him." According to the officer, Redd appeared very nervous, backed away from the car, then turned and walked away. The officer testified that he would have conducted a limited protective search for weapons had Redd allowed him to approach, but "that never ever happened because he never let me get close enough to search him."[1]

When the officer called out to him to come back, Redd responded, " 'I'm not going to be arrested, and I'm not coming back.' " When the officer repeated his request for Redd to stop and talk to him, Redd did not answer but jumped over a guardrail beside the highway and disappeared into nearby woods. Other city and county law enforcement officers arrived in response to the officer's earlier call and surrounded the wooded area that Redd had entered. Another officer encountered Redd coming out of the woods, identified himself,

---

[1] Other officers later found a pepper spray canister on Redd's person.

and ordered Redd not to move. Redd did not obey but turned away and reached into his pocket. The officer drew his service revolver and ordered Redd not to move and to put his hands in the air; Redd first discarded a "small, black case" he was holding in his hand and then obeyed. The case contained two syringes and a white powdery substance later shown to be methamphetamine.

At the hearing, Redd gave a substantially different version of his encounter with the first officer, contending that he responded completely and fully to the officer's questions and told the officer that he lived "right up the road."[2] He testified that he explained to the officer he was simply checking his own mailbox. He then declined to be searched. When the officer continued to follow him in his car, Redd testified he became fearful that the officer was going to run him over, jumped over the railing, slipped, and fell down a hill into the woods. But Redd agreed that he later disobeyed the arresting officer's instructions not to move in order to discard the black case from his pocket.

On appeal, Redd contends there was no basis for the arrest which led to the discovery of the methamphetamine. While acknowledging that the officer had a right to approach him and talk to him, he contends that the officer lacked probable cause to arrest him after their encounter. While Redd's account of his conversation with the officer, if believed, might produce a different result, the officer's contradictory testimony authorized the trial court to conclude that probable cause existed for Redd's ultimate arrest.

In reviewing a motion to suppress, "[t]he evidence is construed most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous. Further, since the trial court sits as the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if there is any evidence to support them." (Citations and punctuation omitted.) *Morgan v. State*, 195 Ga. App. 732, 735 (394 SE2d 639) (1990). As the trier of fact, the trial court was authorized to accept the officer's account of the incident over that presented by Redd.

As Redd acknowledges, the officer's initial questioning of him was proper. "Not all seizures of the person must be justified by probable cause to arrest for a crime. Certain seizures are justifiable under the Fourth Amendment if there is articulable suspicion that a person has committed or is about to commit a crime. Reasonable suspicion of criminal activity warrants a temporary seizure for the purpose of

---

[2] Questioned about Redd's contentions, the officer did not recall Redd giving any information regarding his identity or his residence.

questioning limited to the purpose of the stop." (Citations and punctuation omitted.) *In the Interest of J. L. G.*, 209 Ga. App. 565, 566 (434 SE2d 126) (1993). But an individual's conduct in response to questioning or attempted questioning may rise to the level of probable cause to conduct an arrest or search. The cumulative effect of the officer's observations and Redd's conduct was sufficient to meet this standard.

Information received by radio may form part of the basis for establishing probable cause. *Morgan*, supra at 735. Redd was the only individual present at the scene as reported by the informant, and he matched the informant's description "to a tee." Redd's abrupt change of direction upon seeing the police officer was a further ground for suspicion. See generally id. His refusal to answer questions or follow the officer's instructions can itself be construed as an attempt to leave the scene, "adding another basis for the officers' suspicions." *D'Angelo v. State*, 223 Ga. App. 558, 559 (479 SE2d 384) (1996). Finally, Redd's flight into the woods, "being evidence of consciousness of guilt in the circumstances gave rise to an articulable suspicion that appellant was engaged in criminal activity and authorized police to stop appellant briefly for investigation. Flight in connection with other circumstances may be sufficient probable cause to uphold a warrantless arrest or search." (Citations and punctuation omitted.) *J. L. G.*, supra at 566.

Redd also contends that the officer's right to conduct an inquiry terminated as soon as the officer requested that Redd permit a search of his person. But a request to search does not have this effect, as noted in *State v. Foster*, 209 Ga. App. 143, 145, n. 1 (433 SE2d 109) (1993): "[T]he officers in this case, though having facts sufficient to support a brief detention, initially pressed for consent to search, and when no consent was given, initiated a nonconsensual investigation pursuant to *Terry*." While Redd's account of the incident supports his contention that he answered the officer's questions and the inquiry had ended before he left the scene, the trial court was authorized to believe the officer's account and conclude that Redd did not respond to the officer's questions, never allowed the officer to get close enough to question him or complete a limited patdown for weapons, ignored several requests to stop, and then fled into the woods.

Finally, because Redd threw away the bag containing the methamphetamine when the arresting officer approached him, the trial court was authorized to find that the methamphetamine was not seized as the result of a search but was instead abandoned before Redd's arrest. *D'Angelo*, supra at 559; *Welch v. State*, 217 Ga. App. 412, 413-414 (1) (457 SE2d 829) (1995). Redd's contention that he had already been arrested when he discarded the methamphetamine is without merit. At that time, Redd disobeyed the arresting officer's

order not to move, turned around, and reached into his pocket to discard the bag, causing the officer to believe he was reaching for a weapon. Like the defendant in *Hunt v. State*, 205 Ga. App. 490 (423 SE2d 24) (1992), Redd had not been subjected to the application of physical force, nor had he submitted to an officer's "show of authority." Id. at 491. The trial court did not err in denying Redd's motion to suppress.

*Judgment affirmed. McMurray, P. J., and Beasley, J., concur.*

DECIDED OCTOBER 28, 1997 —
RECONSIDERATION DENIED NOVEMBER 14, 1997.

*Banks, Stubbs & Neville, Rafe Banks III,* for appellant.
*Garry T. Moss, District Attorney, Alla C. Shaw, Assistant District Attorney,* for appellee.