A98A2346. RUSSELL v. THE STATE.
A98A2414. STEELE v. THE STATE.
(512 SE2d 913)

SMITH, Judge.

Derrick Russell and Darrell Steele were indicted jointly for armed robbery. They were tried jointly and convicted by a jury. After judgment was entered, Steele moved for a new trial, while Russell appealed directly to this court. In *Russell v. State*, 230 Ga. App. 546 (497 SE2d 36) (1998), this court found that Russell's conviction was supported by sufficient evidence under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), and found no merit in several other enumerations of error. We affirmed Russell's conviction, however, only on condition that the trial court hold an evidentiary hearing to address issues raised by Russell concerning several in-chambers conferences during which voir dire was conducted, a *McCollum*[1] challenge to the jury's composition was made, and the jury was re-struck.

Upon remand, the trial court consolidated the hearing directed by this court with the hearing on Steele's motion for new trial. That motion raised the same issue with regard to both defendants' absence from the in-chambers conferences, in addition to several other issues. After the hearing, at which both trial counsel, the trial prosecutor, and both defendants testified, the trial court entered an order denying Steele's motion for new trial on all grounds and specifically finding that the defendants had acquiesced in their counsel's waiver of their presence at the in-chambers meetings. Each defendant filed a separate appeal, and those appeals have been consolidated for review because of the common issues. We find that the evidence at

[1] In *Georgia v. McCollum*, 505 U. S. 42 (112 SC 2348, 120 LE2d 33) (1992), the U. S. Supreme Court held that the principle established in *Batson v. Kentucky* as to the State applied as well to a criminal defendant, and that a defendant may not engage in purposeful discrimination on the basis of race in exercising peremptory challenges.

trial was sufficient to authorize Steele's conviction. But because the evidence presented at the post-trial hearing does not support the trial court's finding that both defendants acquiesced in a waiver of their right to be present during voir dire proceedings and jury selection, we conclude that both convictions must be reversed and both defendants afforded a new trial.

1. We first address Steele's contention that the evidence was insufficient to support his conviction. Steele maintains that the evidence showed only that he was merely present when Russell committed an armed robbery. We do not agree.

Construed to support the verdict, the evidence showed that Steele entered a truck rental store on Lawrenceville Highway in DeKalb County shortly after noon. According to the owner, he was wearing a sweater or sweatshirt that had the word "black" written on it, and he looked "around the whole building." When the owner told him that renting a truck would require an $80 deposit, he said he did not have that much money and left. The owner thought Steele had left to go to the bank "to get some money for the deposit, which isn't unusual." Instead, Steele followed another man, Russell, back into the store; Russell pulled a gun and pointed it at the owner. Steele said nothing, but sat on a divan inside the store while the gun was pointed at the owner. The owner turned over all he had to the gunman, which was "between $60 and $100," and the two men left.

The owner called 911 and reported the crime, giving a description of the truck and the robbers. Officer James Steedle of the Clarkston Police Department was on patrol when he heard the lookout. A short time later, he observed a truck that fit the description in the lookout, and he followed it. He activated his lights and siren, and after initially failing to stop, the truck pulled over. Steedle radioed his location and additional officers arrived. A showup was conducted at the scene, and the victim identified both occupants as the robbers. Russell was driving, and Steele was the passenger. Another officer, who assisted Steedle at the arrest, testified that Steele was wearing a sweatshirt that had on its front the words "Black by popular demand." A search of the truck revealed a handgun under the driver's seat.

Detective David Donehoo of the DeKalb County Police Department interviewed Steele at the police station. Steele was read his *Miranda* rights and he agreed to waive his rights and give a statement. In the statement, Steele admitted being at the truck rental store when his companion committed armed robbery but stated he had no prior knowledge that the crime would be committed.

Although Steele was not the gunman, this evidence, including Steele's entering the store first, his following Russell back in, his sitting quietly while Russell pulled the gun and took the money, and his

leaving with Russell in the truck, provided ample evidence to authorize the jury to find him guilty of armed robbery as a party to the crime, under the standard set forth in *Jackson v. Virginia*, supra. OCGA § 16-2-20.

2. In our opinion in *Russell*, supra, we directed the trial court to "consider and balance all relevant factors in arriving at its determination regarding the issue of acquiescence and make relevant findings of fact" on at least six issues: "(1) whether appellant knew of his right to be present during jury selection; (2) whether appellant's counsel waived appellant's right to be present in the presence of appellant; (3) whether appellant posed any form of timely objection to conducting voir dire outside his presence; (4) whether appellant was absent voluntarily or whether he was in confinement or custody of the State; (5) whether the trial court announced in the appellant's presence that counsel would meet with him in chambers to continue the voir dire; and (6) if the trial court so announced the chambers conference in appellant's presence, whether a fair risk existed that such announcement would have misled appellant as to his right to be present during voir dire." Id. at 550 (6).

In its order, the trial court addressed these factors. We need not examine each of the trial court's findings, as we conclude that the trial court's finding as to the first factor is clearly erroneous, warranting reversal. The trial court found that "each defendant at least implicitly knew of his right to be present during jury selection. Both defendants were present at the outset of trial when jury selection began and were present in court when the attorneys informed potential jurors that sensitive issues could be handled privately in chambers. Additionally, both defense counsel testified that it was their normal practice to advise clients of their rights, to explain trial procedures, and to consult with their clients during trial. Although neither attorney recalled specifically telling their clients that they had the right to be present in chambers, both attorneys testified that they informed defendants of what occurred in their absence and neither defendant voiced any objection."

In *Russell*, supra, we reviewed the law with regard to a defendant's right under Art. I, Sec. I, Par. XII of the Georgia Constitution of 1983 to be present during voir dire, which is "a 'critical stage of the proceedings.'" Id. at 546-547 (1). The State conceded, and this court agreed, that as to Russell, the record failed to show either a personal waiver or an express authorization of his counsel to waive his right to be present. Id. The same is true with regard to Steele. We reiterated in *Russell* that although counsel may waive this right for a client, that occurs only if done in the client's presence or with the client's express authority, or if the client subsequently acquiesces in counsel's waiver. Id. at 547. It is well established that even though coun-

sel is present at the critical stage and makes no objection to his client's absence, no waiver of the defendant's right occurs unless the client thereafter knowingly acquiesces in his counsel's choice to proceed without him. Id.; see also *Goodroe v. State*, 224 Ga. App. 378, 380 (1) (480 SE2d 378) (1997).

It is undisputed that neither Russell nor Steele made any objection regarding his absence from the chambers conferences. The question, therefore, is whether this silence amounted to acquiescence by either Russell or Steele in the waiver of his presence by his counsel. "Acquiescing" in such a waiver necessarily implies that one knows of the right one is consenting to relinquish. A waiver is "an intentional relinquishment or abandonment of a known right or privilege." *Williams v. State*, 183 Ga. App. 373, 374 (1) (358 SE2d 914) (1987). "One cannot acquiesce in a wrong while ignorant that it has been committed." *Dunaway v. Windsor*, 197 Ga. 705, 709 (30 SE2d 627) (1944). To determine whether Russell or Steele acquiesced, we must therefore first determine whether either Russell or Steele knew that he had the right to be present when the proceedings moved into chambers to continue the voir dire or jury selection. We cannot assume such knowledge.

Contrary to the trial court's finding, we find that the record does not establish even "implicitly" that either Russell or Steele had such knowledge. The facts relied upon by the trial court arguably may support a finding that Russell and Steele may have known, after the fact, that the *McCollum* challenge was addressed in chambers in their absence. Russell's trial counsel testified that his recollection was that his client and he both disagreed with the trial court's ruling with regard to the challenge. Steele's trial counsel testified that when they returned to the courtroom Steele inquired why they had been gone so long, and she told him that they were dealing with the challenge and that the jury had been reconstituted.

Although both trial counsel testified that it was their general practice to keep their clients informed about events occurring outside their presence, the record does not show that either defendant was informed by counsel that voir dire was being conducted in chambers. We disagree with the trial court's reasoning that such knowledge necessarily follows from Russell's and Steele's presence in court when jury selection began, or from counsel's informing the jury in open court that sensitive issues could be handled in chambers.

But even if we assume that Russell and Steele were aware that voir dire *was* being conducted in chambers, that knowledge would not amount to acquiescence in a waiver unless they also knew they had a right to be present in chambers during the proceeding. The record does not support a finding that they had the requisite knowledge.

The trial transcript includes no statement either in open court or in chambers showing that the defendants were informed of this right. The evidence presented at the post-trial hearing showed that they had no such knowledge. Both defendants testified they did not know they had the right to be present at the chambers conferences. Russell's counsel testified that to the best of his recollection neither he nor anyone else told Russell that he had a right to be present when they moved to chambers. Russell's attorney testified, in fact, that in his opinion, Russell's right to be present was not "considered" and that to the best of his recollection, no one raised the issue of the defendants' presence in chambers.

Counsel for Steele agreed that nothing "was said that [Steele] could or that he could not be present. I think no one said anything either way." She testified unequivocally that although she knew Steele had the right to be present, she did nothing to ensure that he was consenting to give up that right. She did not tell her client that he could come into chambers or that he had the right to do so. She admitted frankly that Steele was absent from the proceedings in chambers because she "didn't tell him he could go back there." She and counsel for Russell never talked about any possible strategy advising their clients not to be present in chambers, and she believed the judge did not, in fact, invite the defendants into chambers or inform them of their right to be there.

The trial prosecutor testified that in her experience in the trial judge's courtroom, it was his usual practice to turn back to the counsel tables as he left the courtroom for a chambers conference and say something like "he can come back or they can come back if they want to," referring to the defendants. But even this testimony is insufficient to support a finding that the defendants were aware of their right to be present. First, the trial prosecutor had no specific recollection as to whether the trial judge followed his customary practice in this case. And Steele's trial counsel, as well as both defendants, testified that he did not. Moreover, even assuming the trial court did follow its usual practice, it is questionable whether turning in the defendants' general direction and stating that "you" or "they" can come, too, would adequately inform the defendants of their right. Russell testified at the post-trial hearing, for instance, that if the court had said something like that, he "would have thought he was telling . . . the other attorney to come back there."

We note that at the end of the evidentiary hearing, the trial court stated for the record that its recollection was that, at least as to the *McCollum* challenge, "I told the court reporter we'd have to go in chambers, and I told the lawyers within hearing distance of these two defendants that they could bring them in if they so desired, and

I went into chambers." But the trial court's "recollection" does not constitute evidence.

When a trial court sits as a trier of fact, its findings of fact must be affirmed unless they are clearly erroneous. See *Redd v. State*, 229 Ga. App. 364, 365 (494 SE2d 31) (1997). In this case, we are constrained to agree with Russell and Steele that the trial court's findings are not supported by any competent evidence. Because no evidence supports a finding that Russell and Steele were aware of their right to be present in chambers during voir dire and jury selection, their convictions must be reversed and they must be afforded a new trial.

3. During the post-trial hearing, after the trial prosecutor testified regarding the trial court's usual practice of informing defendants they could participate in chambers conferences, Russell and Steele orally requested that the judge recuse himself, and the judge denied the request. The defendants then filed a written joint motion requesting a change of judge, on the ground that the trial judge's recollection of the events at trial, particularly as to whether he informed the defendants they could participate in the chambers conferences, was material evidence at the hearing and was not subject to cross-examination. No written order denying the motion appears in the record, but the trial court indicated that counsel should proceed with the hearing.

On appeal, both Russell and Steele complain of the trial court's actions with regard to the recusal motions. Steele contends the trial court erred in failing to recuse himself from conducting the post-trial hearing, and Russell contends the trial court erred in failing to hold a hearing on the joint motion to recuse. Our decision in Division 2, supra, finding that a new trial must be held, renders both these enumerations of error moot. Nevertheless, we take this opportunity to emphasize the importance of adhering to Canon 3 of the Code of Judicial Conduct. It appears from the final order that the trial judge did not rely on his own recollection of events in deciding the issue of whether Russell and Steele acquiesced in a waiver of their right to be present at the in-chambers conferences. But it is elementary that one may not be a witness and a judge in the same proceeding. *Collins v. State*, 141 Ga. App. 121, 122-123 (232 SE2d 635) (1977). And Canon 3 directs judges to "disqualify themselves in proceedings in which their impartiality might reasonably be questioned." Canon 3 required the trial judge to disqualify himself in this case, if not sua sponte, then certainly when his impartiality was drawn into question during the hearing.

4. We address two of Steele's remaining enumerations of error, dealing with the admission of certain evidence, because it is possible they may recur at retrial. At trial, an officer testified that the truck

in which Russell and Steele were riding when they were stopped was stolen. Steele maintains first that notwithstanding that no objection was interposed at trial to the admission of this testimony, it was hearsay and admitting it into evidence was prejudicial to him and not harmless. The officer testified that "the tag was run and it did come back with what we call a 'Code 4,' or stolen." First, the testimony was information in the collective knowledge of the police officers. It was derived from a reliable "chain of information-sharing." *Beck v. State*, 216 Ga. App. 532, 535 (455 SE2d 110) (1995). And it is well established that a traffic stop based upon such collective knowledge is valid. Id.; *State v. Wright*, 221 Ga. App. 202, 204-205 (3) (470 SE2d 916) (1996). We note that Steele does not challenge the stop, thereby at least implicitly acknowledging this principle.

In this case, the routine procedure of running the car tag was also a circumstance of the arrest, and therefore a part of the res gestae. And in *Russell*, supra, we affirmed the trial court's denial of the motion in limine made by Steele to preclude any mention that the truck was stolen. We stated there that " '[w]here evidence is relevant for the purpose of showing flight or the circumstances of arrest, it will not be excluded because it incidentally shows the commission of another crime.' [Cits.]" Id. at 550 (6).

Steele also asserts that the trial court should have given a charge to the jury limiting the jury's consideration of this evidence. Neither Russell nor Steele was charged with the theft of the truck, and the trial court immediately so instructed the jury, although such a charge was not requested. If Steele desires a different limiting instruction at retrial, he may request one.

*Judgments reversed. Johnson, C. J., and Barnes, J., concur.*

DECIDED FEBRUARY 24, 1999.

*Yvonne Twyman-Williams*, for appellant (case no. A98A2346).
*Howard J. Weintraub*, for appellant (case no. A98A2414).
*J. Tom Morgan, District Attorney, Robert M. Coker, Assistant District Attorney*, for appellee.