A99A1045. MIGLIORE v. STATE OF GEORGIA.
(525 SE2d 166)

PHIPPS, Judge.

Michael Migliore appeals a civil in rem judgment forfeiting $40,867.47 and a safe seized in a car search.

On April 26, 1998, Migliore drove south on Interstate 95 accompanied by Jessica Tootle. In Liberty County, Migliore was stopped by Deputy Sheriff Shawn Fields after Fields observed Migliore's car weaving. Fields told Migliore the reason for the stop. Migliore responded that he was traveling from Florence, South Carolina, and was very tired. Fields asked Migliore for his driver's license and car registration. Migliore produced a Florida driver's license and a car rental contract which listed the renter as William Moore. Migliore explained that Moore was his employer and had lent him the car to drive home. Fields asked Tootle if she knew who had rented the car, and she said she did not know. Fields asked Migliore and Tootle how long they had been in Florence and the nature of their relationship. Migliore said he had been working and vacationing in Florence and had been there for three weeks; Tootle said she had been there three days and was on her way home to Cocoa Beach, Florida. Migliore said Tootle was his girlfriend. Tootle said they were friends.

Fields then went to his patrol car and ran Migliore's license. It came back valid. Next, Fields decided to deploy his drug dog Nora in a walk around Migliore's car. Nora alerted and then was placed inside Migliore's car. Marijuana, methamphetamine and the safe were found in the car. The safe contained $40,000 in cash. The remainder of the money — $867.47 — was taken from Migliore's person.

Migliore asserts seven errors. Among them is a claim that the

search of his car was illegal.[1] We need address only the legality of Fields's investigation for drugs. The trial court found, "[T]he statements and behavior of Migliore and Tootle as well as the alerts by drug detection dog 'Nora' were sufficient probable cause for the officer to conduct a lawful search of the vehicle without the consent of the [driver] or passenger."

Fields presented the only testimony at the forfeiture hearing regarding the stop and incidents leading to the search. "Because the evidence at the [forfeiture] hearing was uncontroverted and no question regarding the credibility of witnesses was presented, we conduct a de novo review of the trial court's application of law to the undisputed facts."[2] "On appeal, we accept the trial court's findings of fact unless clearly erroneous, but owe no deference to the trial court's conclusions of law. Instead, we are free to apply anew the legal principles to the facts."[3]

Investigative stops of vehicles are analogous to *Terry* stops.[4] In *Smith v. State*[5] this court stated the strict boundaries of a *Terry* stop:

> While a reasonable investigative stop does not offend against the Fourth Amendment, a *Terry* stop is subject to strict boundaries regarding duration, intent, and scope. Such a stop has been described by this court as a brief stop, limited in time to that minimally necessary to investigate the allegation invoking suspicion, and limited in scope to identification and limited questioning reasonably related to the circumstances that justified the initiation of the momentary stop.[6]

Further, "[a]n officer who questions and detains a suspect for other reasons exceeds the scope of permissible investigation unless he has 'reasonable suspicion' of other criminal activity."[7]

This case bears striking similarities to *Blair*,[8] *Smith*,[9] and *Simmons*,[10] and we find them controlling. In *Blair*, a Georgia state trooper stopped a vehicle on I-85 because it had a dealer's drive-out

---

[1] Although this is a forfeiture action, which is quasi-criminal in nature, the exclusionary rule applies. *Pitts v. State of Ga.*, 207 Ga. App. 606, 607 (1) (428 SE2d 650) (1993).

[2] *Hughes v. State*, 269 Ga. 258, 259 (1) (497 SE2d 790) (1998).

[3] *Espinoza v. State*, 265 Ga. 171, 172 (1) (454 SE2d 765) (1995).

[4] *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

[5] 216 Ga. App. 453, 454 (2) (454 SE2d 635) (1995).

[6] (Citations and punctuation omitted.) Id.

[7] *State v. Blair*, 239 Ga. App. 340, 341 (521 SE2d 380) (1999); *Simmons v. State*, 223 Ga. App. 781, 782 (2) (479 SE2d 123) (1996).

[8] Supra.

[9] Supra.

[10] Supra.

tag. There were four people in the car. The trooper questioned the driver and the front seat passenger. While the car was detained, a canine unit was called. Before the unit arrived, defendant Blair exited the car, fled on foot and ultimately dropped a bag containing marijuana. The trooper testified that he detained the car longer than necessary to investigate the drive-out tag because his suspicions had been aroused. He asserted that the occupants could not produce proof of ownership of the car, provided conflicting explanations for the purpose of their trip, and appeared very nervous and Blair, seated in the rear of the car, was clutching a black bag.[11] We upheld a finding of the trial court that the officer abandoned investigation of the car's registration and licensing and improperly detained the occupants to conduct a search for drugs.[12] We held that the trial court was authorized to find the detention impermissible, because the officer did not have reasonable suspicion of drug activity.[13] Whether a given set of facts rises to the level of reasonable, articulable suspicion of criminal activity is a legal question.[14]

In *Smith*, an officer observed the defendant's car weaving and stopped him for suspicion of driving under the influence. The officer asked the defendant for his driver's license and inquired why he was weaving. The defendant explained that he had traveled from another state and was tired. The officer then abandoned his investigation of DUI, sought the defendant's permission to search his vehicle and inquired whether the defendant had any drugs. The defendant denied having any drugs and refused to consent to a search of his vehicle. The officer then called for a drug dog.

While they waited for the dog to arrive, the defendant sat in his truck, and the officer observed part of a plastic bag sticking out of the defendant's mouth. Ultimately, the officer retrieved the bag, which turned out to contain marijuana. We held, "At the point the officer initiated th[e] . . . probe [for drugs], he went beyond the permissible scope of the investigation and his further detention of [the defendant] went beyond that permitted by *Terry* and its progeny."[15]

In *Simmons*, two officers stopped the defendant for speeding and tailgating as he traveled northward on I-75 in Butts County. After examining documents provided by the defendant, the officers returned the documents to him and warned him for the traffic violations. But they detained him further to ask him whether he was transporting narcotics and to walk a drug dog around his car. The

---

[11] *Blair*, supra at 340.
[12] Id. at 342 (citing generally *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994)).
[13] *Blair*, supra.
[14] See *Hughes*, supra; *Vansant v. State*, 264 Ga. 319, 320-321 (1) (443 SE2d 474) (1994).
[15] *Smith*, supra at 455.

dog alerted, and the officers found approximately 600 grams of cocaine in the defendant's car.

The officers asserted their investigation for drugs was justified, because: (1) the defendant and his passenger both appeared nervous; (2) the rental contract for the defendant's vehicle was in the name of a person not present in the vehicle; and (3) the defendant said he was nervous because he was married and the passenger was his girlfriend.[16] We held that the factors cited by the police were insufficient to extend a traffic stop into an investigation for drugs.[17]

In this case, Fields stopped Migliore's vehicle for a traffic offense, Migliore produced a reasonable explanation, and Migliore's driver's license was valid. Rather than ticket Migliore for weaving or release him, Fields decided to search for drugs.

Fields had no reasonable suspicion that Migliore and Tootle were engaged in drug activity. At the bench trial, Fields testified that he "wanted to walk the canine because of the nervous acting — nervousness of both subjects and their stories not matching." Reasonable suspicion to detain and investigate for illicit drug activity does not arise from nervousness, differing statements regarding whether a relationship is romantic, or the length of time spent at a previous destination. The statements attributed to Tootle and Migliore are not meaningful inconsistencies. Tootle and Migliore may have gone to South Carolina at different times, and it is not uncommon for individuals to have different perceptions of the nature of their relationship. Also, Tootle did not say someone other than Migliore's boss had rented the car. She said she did not know. Under the totality of the circumstances, we find that Fields exceeded the scope of permissible investigation.

The State cites the following cases as authority for the trial court's ruling: *Redd v. State*,[18] *Gebremedhin v. State*,[19] and *Roundtree v. State*.[20] These cases are distinguishable. *Redd* and *Gebremedhin* are factually inapposite. *Roundtree* presents a more substantial basis for a search.

In *Redd*,[21] the denial of a motion to suppress was upheld where police received a tip that defendant was stealing mail, defendant matched a detailed description, defendant was found in the reported location, defendant evaded police questioning and instructions, and defendant fled into woods and discarded a case containing syringes

---

[16] *Simmons*, supra at 782.
[17] Id.
[18] 229 Ga. App. 364 (494 SE2d 31) (1997).
[19] 202 Ga. App. 811 (415 SE2d 529) (1992).
[20] 213 Ga. App. 793 (446 SE2d 204) (1994).
[21] Supra.

and methamphetamine.

In *Gebremedhin*,[22] denials of motions to suppress were upheld where: (1) a reliable confidential informant told police the defendant was selling drugs at a specified location and the defendant was seen there engaging in a hand-to-hand exchange; and (2) the defendant matched the description recorded from a lookout of a drug dealer given by an undercover agent.

In *Roundtree*,[23] a car traveling from Florida was stopped in Dooly County for following too closely. There were two occupants in the car. The driver told the officer the car belonged to the passenger's brother. The passenger said the car belonged to his daughter's mother. The driver and the passenger gave conflicting accounts of how long they had been in Florida. In addition, the officer stated that the driver became increasingly nervous as the encounter progressed. In *Roundtree*, there are clear differences between the stories of the passenger and the driver pertaining to matters more remarkable than whether the occupants were romantically involved; further, there was evidence of heightening anxiety and not simply general nervousness. Those factors distinguish *Roundtree* from this case.

The State argues that Migliore had no standing to challenge the search of the car because the rental contract in the car did not bear his name and was for a different vehicle. As Fields exceeded the permissible bounds of a *Terry* stop in his investigation, the proper inquiry is whether Migliore had standing to contest the *Terry* violation. Standing to contest the search and standing to contest the *Terry* seizure and detention are separate and distinct questions, and different privacy interests are involved.[24]

Stops and detentions under *Terry* implicate personal privacy interests, and searches implicate possessory or property interests.[25] In *Dumas*, the defendant sought to exclude evidence that was seized after he was stopped driving a van that had been rented by someone else. The Seventh Circuit Court of Appeals held, "whether or not he would have had standing to challenge a search of the rented van, [the defendant] undoubtedly has standing to challenge the seizure of his own person which occurred in the form of the stop and ensuing detention."[26] The same is true for Migliore. Moreover, we have found standing to challenge the search where the vehicle was borrowed and the driver had personalty in it.[27]

---

[22] Supra.
[23] Supra.
[24] See *United States v. Dumas*, 94 F3d 286, 290 (7th Cir. 1996).
[25] Id.
[26] Id.
[27] See *State v. Marcus*, 206 Ga. App. 385 (425 SE2d 351) (1992).

*Judgment reversed. Smith and Eldridge, JJ., concur.*

DECIDED NOVEMBER 15, 1999.

*Phillips & Kitchings, Richard D. Phillips, Joseph C. Kitchings*, for appellant.

*J. Thomas Durden, Jr., District Attorney, Carole E. Wall, Assistant District Attorney*, for appellee.