## A99A1631. ALMOND v. THE STATE.
(530 SE2d 750)

MILLER, Judge.

Terri Almond was charged with possession of cocaine based on evidence an officer acquired during a traffic stop. She moved to suppress this evidence, arguing that at the time the officer obtained the evidence he had, without reasonable grounds, improperly expanded the scope of the stop beyond its original purpose. Finding that Almond was not illegally detained, the trial court denied the motion and in a bench trial convicted her based on the evidence. Because the officer had an articulable suspicion to expand or extend the scope of inquiry and detention, we affirm.

1. Almond first contends that because the officer lacked an articulable suspicion to continue the detention, the court should have granted her motion to suppress. Where the evidence on a motion to suppress is uncontroverted and credibility is not an issue, we review the evidence and the application of the law thereto de novo,[1] construing all evidence in favor of the trial court's judgment.[2]

The officer was the only witness to testify. He observed that the vehicle Almond was driving was improperly stopped in the roadway with a man leaning into her window and a woman seated nearby. The

[1] *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).
[2] *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

officer recognized the man by name as someone reported to him by concerned citizens as selling cocaine at that corner. The officer motioned for her to move her vehicle forward, and she shouted back that she was talking to her girlfriend. After she pulled forward, he turned on his blue flashing lights and detained her to investigate the improper stopping as well as her apparent loitering in a known open air drug market.

When asked why she was stopped in the roadway, Almond explained that her girlfriend had flagged her down and that she did not know where she needed to stop because there was no driveway to pull into. In fact, there was a driveway 20 feet from where she was stopped. He inquired whether she was familiar with the area, and she responded that she knew a local road, but since the road was not adjacent to any of the roads on which the officer and she were located, the officer considered this response "particularly curious" and "completely out of context with the conversation." He asked her where the girlfriend lived, and she responded that she did not know and that she only knew her from attending some substance abuse treatment meetings together. The officer checked her license and registration, which showed no problems. He began to write her a citation for the improper stopping.

Suspecting that Almond might be in the area to purchase illegal drugs, the officer changed the focus of the detention and investigation to determining whether she possessed drugs. He based this suspicion on (a) the appearance that she had hastily pulled up to the intersection and stopped illegally, (b) her inconsistent responses to his questions, (c) his having previously made three to five drug arrests in the vicinity, (d) previous reports from concerned citizens (including some members of the man's family) that the man leaning into Almond's car window sold drugs at that corner, and (e) Almond's nervousness. He directed her to step out of her vehicle and asked if she had anything in her vehicle that he should know about. She replied at first that she did not know and then said no. He asked for consent to search her vehicle, which she gave. After further inquiry but before any consensual search began, she confessed to having a crack pipe and produced it to the officer. The search produced a single rock of crack cocaine.

Almond does not contest the validity of the initial traffic stop to investigate the improper stopping of her vehicle. Rather, she contends that after having satisfied his inquiry into this matter, the officer, without an articulable suspicion, expanded the scope of the detention and investigation to determine whether she had illegal drugs.

*Migliore v. State of Ga.*[3] recently reiterated the limits on investigatory traffic stops:

> While a reasonable investigative stop does not offend against the Fourth Amendment, a *Terry* stop is subject to strict boundaries regarding duration, intent, and scope. Such a stop has been described by this court as a brief stop, limited in time to that minimally necessary to investigate the allegation invoking suspicion, and limited in scope to identification and limited questioning reasonably related to the circumstances that justified the initiation of the momentary stop.[4]

The United States Supreme Court has emphasized that "[t]he scope of the detention must be carefully tailored to its underlying justification."[5]

If during an investigatory stop the officer, without an articulable suspicion, proceeds to ask questions unrelated to the reason for the stop, the officer goes beyond the permissible scope of the investigation, and the further detention of the car driver exceeds that permitted by *Terry v. Ohio*[6] and its progeny.[7] To give deterrent effect to the exclusionary rule, a court must suppress evidence obtained through an excessive detention and investigation.[8]

Although the officer did not observe a hand-to-hand drug sale, he redirected his investigation from inquiring into the circumstances of the traffic violation to inquiring into Almond's possible possession or attempted purchase of illegal drugs. The expanded inquiry would constitute an illegal detention if that expansion was not supported by an articulable suspicion.[9]

The reasons the officer gave for expanding the inquiry suffice to establish a reasonable, articulable suspicion of drug possession. Initially alerted by the appearance that Almond had hastily pulled over near an intersection in a high drug traffic area, the officer was mystified by Almond's out-of-context and inconsistent responses to his questions about her actions. Combined with "concerned citizen"

---

[3] 240 Ga. App. 783 (525 SE2d 166) (1999).

[4] (Citation and punctuation omitted.) Id. at 784. See *State v. Blair*, 239 Ga. App. 340, 341 (521 SE2d 380) (1999).

[5] *Florida v. Royer*, 460 U. S. 491, 500 (II) (103 SC 1319, 75 LE2d 229) (1983) (plurality opinion); see *Smith v. State*, 216 Ga. App. 453, 454 (2) (454 SE2d 635) (1995).

[6] 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

[7] *Smith*, supra, 216 Ga. App. at 455 (2); see *Migliore*, supra, 240 Ga. App. at 785; *Blair*, supra, 239 Ga. App. at 341; *United States v. Fernandez*, 18 F3d 874, 878 (10th Cir. 1994).

[8] *Smith*, supra, 216 Ga. App. at 455 (2); see *Blair*, supra, 239 Ga. App. at 342; see generally OCGA § 17-5-30 (a).

[9] *Smith*, supra, 216 Ga. App. at 455 (2).

reports that the man leaning in her window sold drugs at that very corner, plus Almond's nervousness, these circumstances constituted facts supporting a reasonable, articulable suspicion that Almond may have been purchasing illegal drugs. Although each of these factors alone may have been insufficient,[10] the convergence of them at one time sufficed.[11]

2. Almond contends that the officer coerced her consent to search. The record does not support this conclusion, as the State presented evidence to meet its burden of proving that the consent was freely and voluntarily given.[12] This consent was not withdrawn.[13] Moreover, before the officer conducted the search, Almond volunteered the crack pipe to the officer, thus giving him probable cause to conduct a warrantless search even without consent.[14]

The trial court did not err in denying the motion to suppress.
*Judgment affirmed. Pope, P. J., and Smith, J., concur.*

DECIDED MARCH 9, 2000.

*John W. Donnelly*, for appellant.
*Harry N. Gordon, District Attorney, John A. Pursley, Assistant District Attorney*, for appellee.

---

[10] *State v. Robinson*, 239 Ga. App. 349, 350 (521 SE2d 377) (1999) (speaking with someone in high drug area is insufficient); *State v. Kwiatkowski*, 238 Ga. App. 390, 393 (519 SE2d 43) (1999) (stopping in drug area and nervousness are insufficient); *Parker v. State*, 233 Ga. App. 616, 618 (1) (504 SE2d 774) (1998) (nervousness alone is insufficient).

[11] See *Pitts v. State*, 221 Ga. App. 309, 311 (2) (471 SE2d 270) (1996) (combination of unusual anxiousness and conflicting accounts of travel itinerary sufficed).

[12] See *Raulerson v. State*, 268 Ga. 623, 625 (2) (a) (491 SE2d 791) (1997).

[13] See *Underwood v. State*, 218 Ga. App. 530 (462 SE2d 434) (1995).

[14] Cf. *Dupree v. State*, 232 Ga. App. 573, 574 (502 SE2d 511) (1998) (probable cause authorizes a warrantless search).