A11A0153. STATE OF GEORGIA v. CENTERS et al.

(713 SE2d 479)

DOYLE, Judge.

The State of Georgia appeals from an order denying its in rem forfeiture action and adjudicating Wilburn Centers an innocent owner of a vehicle seized by the State when his wife, Tracy Centers, was arrested for possessing methamphetamine and other crimes. Because the trial court erred as a matter of law by concluding that Wilburn was

a legal owner of the vehicle when it was seized, we reverse.

Under OCGA § 16-13-49 (o) (5) and (p) (6), an in rem forfeiture proceeding shall be held, as here, by the court without a jury.[1] "Upon appellate review, factual findings made after [such] a bench trial shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."[2] Where the evidence is

> uncontroverted and no question regarding the credibility of witnesses was presented, we conduct a de novo review of the trial court's application of law to the undisputed facts . . . [, and we] owe no deference to the trial court's conclusions of law. Instead, we are free to apply anew the legal principles to the facts.[3]

The relevant evidence is without material dispute and shows that in June 2004, Wilburn obtained financing and bought a used Chevrolet Corvette from another party through an advertisement on the Internet. A certificate of title was issued in Wilburn's name, and in 2006, after Wilburn paid off the financing for the car, the security interest was released, leaving Wilburn with sole, unencumbered ownership of the vehicle.

In December 2008, Tracy told Wilburn that she had been abusing methamphetamine. Wilburn took her to a rehabilitation facility for evaluation and treatment, searched their home for drugs, and thereafter had Tracy tested for drugs. On January 8, 2009, in honor of Tracy's recent birthday, Wilburn assigned title to the Corvette to Tracy, and they completed an application for a new certificate of title at the county tag office. On January 9, Tracy drove the Corvette to a funeral for a friend while Wilburn stayed at home. After the funeral, Tracy was arrested with another friend in the Corvette when officers discovered that she possessed a firearm and methamphetamine in the car while parked outside of an elementary school. The officers impounded the Corvette at the scene, and on January 20, 2009, Tracy and Wilburn again executed an assignment and application for a certificate of title, purporting to transfer title back from Tracy to Wilburn. On February 16, 2009, the State initiated this in rem forfeiture action.

Tracy and Wilburn each filed answers in the action, asserting claims to the vehicle. Following a bench trial, the trial court ruled

---

[1] See *Lyon v. State of Ga.*, 230 Ga. App. 264 (495 SE2d 899) (1998).

[2] (Punctuation omitted.) Id.

[3] (Punctuation and footnote omitted.) *Migliore v. State of Ga.*, 240 Ga. App. 783, 784 (525 SE2d 166) (1999).

that the forfeiture was authorized as to Tracy, but not as to Wilburn. The State filed this appeal.

The State contends that the trial court erred by ruling that Wilburn had an interest in the vehicle such that he could assert a viable claim as an innocent owner in the forfeiture action. We agree.

"In a condemnation action, once the State has presented a prima facie case for forfeiture, the claimant has the burden of establishing by a preponderance of the evidence that [he] is an innocent owner."[4] OCGA § 16-13-49 (d) (2) mandates that no person shall have a property right in any "property which is, directly or indirectly, used . . . in any manner to facilitate a violation of" the Georgia Controlled Substances Act.[5] Here, as found by the trial court, the State's evidence showed that

> there is no doubt that Mrs. Centers really messed up. She had gotten strung out on drugs. . . . She met with somebody after the funeral who was amongst . . . the wrong crowd. She had drugs in her purse. She had a gun in her car. All of [this] justified everything the law enforcement officers did, justified their seizing of the vehicle and arresting of her and were this case to be determined completely on the conduct of Mrs. Centers there is no question at all but what the court would require a forfeiture.

Thus, because the evidence supported these findings, the trial court correctly ruled that the State had established a prima facie case supporting the forfeiture.[6]

Wilburn's burden, therefore, was two-fold:

> in order to establish standing to contest the forfeiture[,] the claimant has the burden of proving the nature and extent of his interest in the property. Second, the claimant must prove by a preponderance of the evidence that he is entitled to the [innocent owner] exception as defined by the statute.[7]

The forfeiture statute defines the term "owner" as "a person, other

---

[4] (Punctuation omitted.) *Sumner v. State of Ga.*, 306 Ga. App. 140, 141 (1) (701 SE2d 585) (2010).

[5] See OCGA §§ 16-13-20; 16-13-30 (a).

[6] See *Gearin v. State of Ga.*, 218 Ga. App. 390, 391-392 (2) (461 SE2d 562) (1995) (forfeiture of vehicle authorized by presence of methamphetamine and gun in vehicle).

[7] (Citations and punctuation omitted.) *State of Ga. v. Banks*, 215 Ga. App. 828, 832 (2) (452 SE2d 533) (1994).

than [a secured party], who has an interest in the property . . . ,"[8] and requires such a claimant to show that he:

(A) Is not legally accountable for the conduct giving rise to its forfeiture, did not consent to it, and did not know and could not reasonably have known of the conduct or that it was likely to occur;

(B) Had not acquired and did not stand to acquire substantial proceeds from the conduct giving rise to its forfeiture other than as an interest holder in an arm's length commercial transaction;

(C) With respect to conveyances for transportation only, *did not hold the property jointly, in common, or in community with a person whose conduct gave rise to its forfeiture*;

(D) Does not hold the property for the benefit of or as nominee for any person whose conduct gave rise to its forfeiture, and, if the owner or interest holder acquired the interest through any such person, the owner or interest holder acquired it as a bona fide purchaser for value without knowingly taking part in an illegal transaction; *and*

(E) Acquired the interest: (i) Before the completion of the conduct giving rise to its forfeiture, and the person whose conduct gave rise to its forfeiture did not have the authority to convey the interest to a bona fide purchaser for value at the time of the conduct; or (ii) After the completion of the conduct giving rise to its forfeiture: (I) As a bona fide purchaser for value without knowingly taking part in an illegal transaction; (II) Before the filing of a lien on it and before the effective date of a notice of pending forfeiture relating to it and without notice of its seizure for forfeiture under this article; *and* (III) *At the time the interest was acquired, was reasonably without cause to believe that the property was subject to forfeiture or likely to become subject to forfeiture under this article.*[9]

With respect to Wilburn, who did everything in his power to prevent Tracy's drug use and rehabilitate her, the trial court announced its decision not to focus on individual legal questions but rather to "do what's right." While the trial court may be correct that the State's pursuit of forfeiture in this particular case seems to be a disproportionate remedy to Tracy's use of the Corvette, the forfei-

---

[8] OCGA § 16-13-49 (a) (6), (7).

[9] (Emphasis supplied.) OCGA § 16-13-49 (e) (1). See *State of Ga. v. Davis*, 292 Ga. App. 387, 388 (665 SE2d 350) (2008).

ture statute authorized the State's action, and we cannot ignore Wilburn's obligation to meet his statutory burden. Thus, despite the trial court's laudable intention, we conclude that the court erred by overlooking the fact that Wilburn had divested himself of legal title to the Corvette the day before it was seized. Thus, he could not show that he was the "owner" of the Corvette for purposes of contesting the forfeiture as an innocent owner.

Wilburn points out on appeal that the certificate of title was *issued to* Tracy on January 13, 2009 — four days after the seizure. However, this does not change the fact that he assigned his interest to her on January 8, and the certificate itself listed the purchase date (in this case, the date of the gift) as January 8 — one day before the seizure.[10] Further, OCGA § 40-3-32 (a), which addresses the transfer of vehicles, requires the transferor to, "at the time of delivery of the vehicle, execute an assignment and warranty of title to the transferee in the space provided therefor on the certificate of title . . . and cause the certificate and assignment to be delivered to the transferee." This is exactly what happened on January 8; thus, the assignment to Tracy was completed one day before the seizure, and Wilburn had no ownership interest in the vehicle on that day.

Furthermore, even assuming the transaction was somehow incomplete during the pendency of Tracy's application for a certificate of title, Wilburn had a burden to show that he "did not hold the property jointly, in common, or in community with a person whose conduct gave rise to its forfeiture."[11] As explained by Wilburn himself, he believed that the certificate of title "doesn't matter with the name[,] everything we own is ours from the point we was married[;] that's kind of the whole thing when you take the [marriage] oath[,] that everything is ours. . . . We still own [the vehicle] jointly." Consistent with their practice of community ownership,[12] Wilburn sought to formalize Tracy's interest in the Corvette by transferring title to her. Thus, at least as of January 8, 2009, the evidence cannot support a finding that Wilburn did not hold the Corvette jointly or in community with Tracy, whose conduct gave rise to the forfeiture. Accordingly, Wilburn failed to meet his burden under OCGA § 16-13-49 (e) (1) (C).

Finally, the January 20 transfer back to Wilburn does not change this analysis, because Wilburn cannot show that "[a]t the time [that] interest was acquired, [he] was reasonably without cause to believe

---

[10] See, e.g., *Banks*, 215 Ga. App. at 830 (1) ("it is the substantive law of contract (and not the Motor Vehicle Certificate of Title Act) which creates and defines property interests in motor vehicles"); *McFarley v. State of Ga.*, 268 Ga. App. 621, 623 (602 SE2d 341) (2004).

[11] OCGA § 16-13-49 (e) (1) (C).

[12] See *Sumner*, 306 Ga. App. at 142-143 (2).

that the property was subject to forfeiture or likely to become subject to forfeiture under this article."[13] Wilburn witnessed the seizure of the vehicle, and he and Tracy attempted the January 20, 2009 transfer specifically because of the questionable status of the Corvette.

In light of the undisputed evidence showing that Wilburn lacked title to the Corvette and that any other interest he might have had was in community with Tracy, the trial court erred by finding him an innocent owner. Therefore, we reverse the trial court's judgment.

*Judgment reversed. Ellington, C. J., and Miller, P. J., concur.*

DECIDED JULY 1, 2011.

*Joe W. Hendricks, Jr., District Attorney, David V. Rhoden, Assistant District Attorney*, for appellant.

*Weaver & Weaver, George W. Weaver*, for appellees.

---

[13] OCGA § 16-13-49 (e) (1) (E) (ii) (III).