**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**January 15, 2013**

# In the Court of Appeals of Georgia

A12A1853. BUCHANAN v. STATE OF GEORGIA.

DILLARD, Judge.

Following a bench trial in this *in rem* civil forfeiture action, James Buchanan forfeited his truck to the State on the ground that it was used to facilitate his possession of methamphetamine. Buchanan appeals, arguing that the trial court erred in finding that the forfeiture was not excessive and in failing to make the required findings supporting the forfeiture on the record. We agree that the record does not indicate whether the trial court considered the mandatory guidelines outlined by our Supreme Court in *Howell v. State of Georgia*[1] in determining whether the forfeiture was excessive. We, therefore, vacate the judgment of the trial court and remand this

---

[1] 283 Ga. 24 (656 SE2d 511) (2008).

case with direction that the trial court consider these guidelines and make appropriate findings on the record.

Construed to support the judgment,[2] the evidence shows that in late June 2011, the Cedartown Police Department and federal narcotics agents began conducting surveillance on a local residence after they observed a vehicle known to be transporting a large amount of illegal narcotics and money stop at that house. Subsequently, the agents reviewed public-utility records and determined that this residence was not receiving either power or water. However, the house and yard appeared to be well-maintained, leading the agents to believe—based on their experience—that the residence was being used to stash illegal drugs.

A few days later, on June 26, 2011, the narcotics agents arrived on the scene to begin that day's surveillance of the house, when they observed Buchanan mowing the residence's lawn. Approximately 15 minutes later, Buchanan finished his task and briefly spoke with an unidentified man at the home before driving away in a 2005 Chevrolet Silverado C150 truck with a Cobb County license plate. At that point, the agents radioed a Cedartown police officer, who was on patrol nearby, and requested

---

[2] *See, e.g., Walker v. State of Ga.*, 281 Ga. App. 526, 526 (636 SE2d 705) (2006).

2

that he conduct a traffic stop of Buchanan's truck if possible. Shortly thereafter, the Cedartown police officer spotted the truck. And after observing Buchanan's vehicle briefly swerve over the fog line, the officer initiated a traffic stop for failure to maintain a single lane.

Upon stopping the vehicle, the officer approached and immediately noticed that Buchanan was shaky and nervous. Nevertheless, Buchanan consented when the officer asked if he could search the vehicle. And after finding no illegal contraband in the truck, the officer requested that Buchanan empty his pockets. Buchanan again complied and produced some prescription pills that were not in their original container. Consequently, the officer arrested Buchanan and, in the course of conducting another search of his person, found less than one gram of methamphetamine.

Several days after Buchanan's arrest, the narcotics agents went to the Cedartown residence that was under surveillance and spoke to the man—now identified as Sergio Carrizales—whom they had seen conversing with Buchanan. Following this conversation, the agents searched the residence and discovered a large amount of methamphetamine.

Within a month, the State filed an *in rem* complaint pursuant to OCGA § 16-13-49 (b) (1) (C), seeking forfeiture of Buchanan's truck on the grounds that, *inter alia*, it was used to facilitate his possession of methamphetamine.[3] During the forfeiture hearing, the parties stipulated that the truck's value was $12,690, and the State presented evidence regarding the surveillance and eventual search of the stash house, as well as the circumstances surrounding Buchanan's arrest. Buchanan submitted evidence indicating that he paid for his truck using money he received as a result of a Social Security disability award, and at the close of the State's case, he moved for a directed verdict. At the conclusion of the hearing, the trial court took the issue under advisement, but less than two months later, it entered a judgment that the truck was forfeited. This appeal follows.

At the outset, we note that in rendering judgment on a complaint for forfeiture, the trial court is required to "make mixed findings of fact and law, which this Court must accept unless they are clearly erroneous."[4] And we defer to the trial court's judgment as to witness credibility and will "affirm the trial court's findings if there

---

[3] *See* OCGA § 16-13-30 (a).

[4] *Little v. State of Ga.*, 279 Ga. App. 329, 330 (630 SE2d 903) (2006) (punctuation omitted).

4

is any evidence supporting them."[5] But when the evidence is uncontroverted and no question regarding the credibility of witnesses was presented below, "we conduct a de novo review of the trial court's application of law to the undisputed facts, . . . owe no deference to the trial court's conclusions of law[, and] . . . we are free to apply anew the legal principles to the facts."[6] With these guiding principles in mind, we will now address Buchanan's enumerations of error.

Buchanan contends that the trial court erred in finding that the forfeiture was not an excessive fine in violation of the Eighth Amendment to the United States Constitution and in failing to make on-the-record findings supporting the forfeiture, which are required by our Supreme Court's decision in *Howell v. State of Georgia*.[7] We agree that the record does not indicate whether the trial court considered these mandatory guidelines.

---

[5] *Id.*

[6] *State of Ga. v. Centers*, 310 Ga. App. 413, 414 (713 SE2d 479) (2011) (punctuation omitted).

[7] 283 Ga. 24.

In *Thorp v. State of Georgia*,[8] our Supreme Court recognized that the Excessive-Fines Clause of the Eighth Amendment to the United States Constitution applies to *in rem* forfeitures and, for this reason, adopted a three-factor test to determine whether a forfeiture is excessive. Explaining the details of that test, the Court noted that

> [t]he first factor requires a consideration of the inherent gravity of the offense compared with the harshness of the penalty. The second factor evaluates whether the property was close enough to the offense to render it guilty. The third part of the analysis is whether the criminal activity involving the defendant property was extensive in terms of time and/or spatial use.[9]

Subsequently, this Court held that a trial court's minimal inquiry in analyzing a challenge to a forfeiture judgment under the Excessive-Fines Clause of the Eighth Amendment must be made on the record.[10]

---

[8] 264 Ga. 712 (450 SE2d 416) (1994).

[9] *Howell*, 283 Ga. at 25 (1) (citations and punctuation omitted); *see also Thorp*, 264 Ga. at 717 (3).

[10] *See Salmon v. State*, 249 Ga. App. 591, 592 (2) (549 SE2d 421) (2001) (holding that the record of trial court's findings of fact and conclusions of law was insufficient to show whether the court considered the required factors in determining whether a forfeiture was an excessive fine); *Mitchell v. State*, 236 Ga. App. 335, 336 (1) (511 SE2d 880) (1999) (same).

6

Several years later, in *United States v. Bajakajian*,[11] the Supreme Court of the United States held that the standard to be applied in Excessive-Fine-Clause analyses was essentially the same as that employed in cruel-and-unusual-punishment cases, holding that "a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense."[12] The federal courts then developed the application of that standard more fully.[13] And in *Howell v. State of Georgia*,[14] our Supreme Court found "particularly useful" the standard applied by the United States Court of Appeals for the Second Circuit in *von Hofe v. United States*,[15] framing the excessiveness inquiry by considering

> (1) the harshness, or gross disproportionality, of the forfeiture in comparison to the gravity of the offense, giving due regard to (a) the offense committed and its relation to other criminal activity, (b) whether the claimant falls within the class of persons for whom the statute was designed, (c) the punishments available, and (d) the harm caused by the claimant's conduct; (2) the nexus between the property and the criminal

---

[11] 524 U.S. 321 (118 SCt 2028, 141 LE2d 314) (1998).

[12] *Id.* at 334 (III) (A).

[13] *See, e.g., von Hofe v. United States*, 492 F3d 175, 186 (III) (2nd Cir. 2007).

[14] 283 Ga. 24.

[15] 492 F3d 175 (2nd Cir. 2007).

offenses, including the deliberate nature of the use and the temporal and spatial extent of the use; and (3) the culpability of each claimant.[16]

In adopting this standard, the Supreme Court of Georgia further noted that although the three-factor test in *Thorp* was not inconsistent with the test under *Bajakajian* that was further developed by the federal courts, it was not as complete and, therefore, was now superseded.[17] However, nothing in our Supreme Court's adoption of the more detailed standard for Excessive-Fine-Clause analyses obviates the requirement that trial courts make such findings and conclusions on the record. Indeed, given the increased level of detailed analysis required by *Howell*, it is even more important that a trial court make its findings of fact and conclusions of law on the record so as to provide an opportunity for meaningful appellate review of its decision.[18]

---

[16] 283 Ga. at 26 (1) (punctuation omitted).

[17] *See id.* ("we adopt the analysis in *von Hofe v. United States,* and consider it to supersede the three-factor test in *Thorp.*" (punctuation omitted)).

[18] *Cf. Clay v. State*, 290 Ga. 822, 838 (3) (B) (725 SE2d 260) (2012) (holding that the trial court was required to make specific findings on the record when determining, pursuant to OCGA § 24-9-84.1, whether evidence of a defendant's past conviction is more probative than prejudicial); *Grant v. State*, 302 Ga. App. 661, 665 (2) (691 SE2d 581) (2010) (holding that trial court must make findings regarding admissibility of similar-transaction evidence on the record).

Here, Buchanan argued in his motion for directed verdict that a forfeiture of his truck would constitute an excessive fine in violation of the Eighth Amendment and, at the conclusion of the forfeiture hearing, the State requested that it be allowed to submit a response brief on the issue. The trial court agreed and took the matter under advisement. However, despite these circumstances, the trial court's order entering a judgment of forfeiture does not indicate that the court even considered *Howell* or made any findings pursuant to the detailed analysis required by that decision. Accordingly, we vacate the trial court's judgment of forfeiture and remand this case for further proceedings in the trial court consistent with *Howell*.[19] Because a hearing was conducted, no further evidentiary hearing is necessary, unless the trial court concludes otherwise.[20] But regardless of whether another evidentiary hearing is held, the trial court is directed to enter a new order including findings of fact and

---

[19] *See Salmon*, 249 Ga. App. at 592 (2) (vacating the trial court's order and remanding the case for further proceedings on the grounds that the record did not indicate whether the trial court engaged in the excessive-fine analysis required by *Thorp*); *Mitchell*, 236 Ga. App. at 336 (1) (same).

[20] *See Salmon*, 249 Ga. App. at 592 (2); *Mitchell*, 236 Ga. App. at 336 (1).

conclusions of law pursuant to the analysis required by *Howell*, and either party shall be entitled to appeal the trial court's new order within 30 days of its entry.[21]

*Judgment vacated and case remanded with direction. Ellington, C. J., and Phipps, P. J., concur.*

---

[21] *Id.*