A01A1956. PADRON v. THE STATE.
A01A1957. CABRERA v. THE STATE.
(562 SE2d 244)

BLACKBURN, Chief Judge.

By interlocutory appeal, Beatriz Padron and Orestes Cabrera challenge the trial court's denial of their separate motions to suppress certain evidence found in their luggage during a search of the trunk of their vehicle. After review, we find that the trial court misapplied controlling law, and we reverse.

When reviewing a trial court's decision on a motion to suppress, we must adopt the trial court's findings of fact unless those findings are clearly erroneous and not supported by any evidence. *State v. David*.[1] However, when conducting such review, we owe no deference to the trial court's application of the law to undisputed facts. *Hughes v. State*.[2]

Shortly after 9:30 p.m., while on patrol, Lowndes County Deputy Sheriff Bobby Gene Benefield stopped Cabrera's vehicle on I-75 for a

---

[1] *State v. David*, 269 Ga. 533, 535 (1) (501 SE2d 494) (1998).
[2] *Hughes v. State*, 269 Ga. 258, 259 (1) (497 SE2d 790) (1998).

minor traffic violation. Cabrera and his wife, Padron, were the sole occupants of the vehicle. After informing Cabrera that he had been stopped for weaving, Benefield asked him if he was sleepy. Two or three times, the deputy asked him about his proficiency in English. About six minutes after initiating the traffic stop, Benefield told Cabrera that he intended to issue him a warning and started to write out the citation. While doing so, Benefield's partner confirmed that Cabrera's driver's license was valid. Benefield returned the license to Cabrera and repeated that the citation was just a warning. While doing so, Benefield suddenly said, "[l]et me ask you this," and inquired as to whether drugs, guns, alcohol, or large amounts of currency were in the vehicle. After Cabrera denied having any contraband, Benefield asked, "[w]ould you mind letting me search your car?" Cabrera answered, "what?" Apparently, Benefield repeated the question, and Cabrera's response is inaudible on the videotape. Benefield again asked, "[w]ould you give me permission to search through the car?" to which Cabrera responded, "okay." Seeking further confirmation of Cabrera's consent, Benefield asked Cabrera two more times, "[y]ou don't mind?" and each time Cabrera seemed to consent. Benefield proceeded to search the vehicle. In the trunk, Benefield saw a black suitcase. Before the suitcase was opened and searched, Cabrera attempted at least three times to move closer. Each time Benefield ordered him to stand back using a stern tone of voice, plainly exercising control over Cabrera's freedom of movement. By this show of authority, Cabrera's freedom was obviously curtailed. Cabrera tried to protest that the luggage contained his and his wife's clothes. During a search of the suitcase, a substance suspected to be cocaine was discovered inside it. When Cabrera denied knowing what it was, Benefield summoned backup to the scene. Field tests were positive for cocaine. Benefield then arrested the couple. The suspected cocaine was found about 20 minutes from the time the traffic stop began and about 12 minutes after Benefield sought Cabrera's consent.

At the suppression hearing, Benefield testified that after he stopped Cabrera for the traffic violation, Cabrera seemed "very nervous." Benefield testified that he was puzzled by the apparent nervousness of Cabrera and did not believe that Cabrera's and Padron's versions of their destination in Florida corresponded. Benefield testified and the videotape confirms that when he asked Cabrera for permission to search his car, Cabrera appears to agree to the search. Upon opening the trunk, Benefield saw a black suitcase. He testified, "Mr. Cabrera tried several times to walk up to me and tell me that that suitcase was his and his wife's clothes. When I opened the suitcase I saw a white plastic bag that was tied at the top with a knot. I asked Cabrera what was in the white bag and he said it was his bag.

I asked what was in the bag and he said, let me see the bag." Benefield testified that at no point did Cabrera ever ask him to stop searching his vehicle or ask to leave.

When asked on cross-examination, "[n]ow, after you gave him the warning ticket and the driver's license back, was he free to leave?" Benefield responded in the negative. Benefield explained that "[d]ue to his nervousness and the confusion I had with what he was telling me, I felt there may be something criminal going on and that's when I asked him for permission to search." Benefield admitted that the questioning about the contents of the car occurred after he issued the warning ticket. This colloquy then ensued.

> DEFENSE COUNSEL: Between the time you gave him the warning ticket and the time you asked him for consent to search you didn't notice anything that was out of the ordinary, correct?
> DEPUTY: No, I didn't.
> DEFENSE COUNSEL: So, basically, when you were asking those questions you were on a fishing expedition?
> DEPUTY: I wouldn't say a fishing expedition.
> DEFENSE COUNSEL: You had a hunch that there was something going on?
> DEPUTY: Yes, ma'am.

When the trial court interposed, "[h]e was just being held because you were curious?" the deputy answered, "I was trying to figure out what the confusion was and why he was so nervous, yes, sir, other than me just stopping him."

After viewing the videotape of the traffic stop and considering the testimony offered at the suppression hearing, the trial court denied the motion to suppress. The trial court expressed concern that the deputy should have obtained an interpreter or a deputy fluent in Spanish and noted that "defendant Cabrera was not pacing and nervous but under [the] circumstances [of] standing on the interstate with vehicles going by, was calm and cooperative to the extent that he could be given the language barrier." Nevertheless, the trial court concluded, "I do find that the consent given by Cabrera . . . was after he understood what was requested of him in terms of consent to search the car." The trial court found that "[i]n this case the stop was valid and the consent was understood and was valid."

Padron and Cabrera separately appeal the trial court's findings.

### Case No. A01A1957

1. Cabrera contends that the evidence was obtained as the result of an illegal detention that lacked articulable suspicion and that exceeded the scope of a permissible investigation. We agree.

The Fourth Amendment protects a person's right to be secure against unreasonable searches and seizures. The " 'touchstone of the Fourth Amendment is reasonableness.' *Florida v. Jimeno*."[3] *Ohio v. Robinette*.[4] "Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances." Id.

*State v. Sims*.[5] In applying the Fourth Amendment in the context of a traffic stop,

> if the officer *continues to detain* the subject after the conclusion of the traffic stop and interrogates him or seeks consent to search without reasonable suspicion of criminal activity, the officer has exceeded the scope of a permissible investigation of the initial traffic stop. This is so because "a search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope." And, "(t)he scope of the search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible."

(Citations omitted; emphasis in original.) Id. at 279-280. Thus, to justify additional questioning of a driver and the search of his vehicle following a routine traffic stop, an officer must have reasonable suspicion of criminal conduct. *Parker v. State*.[6] To satisfy this "reasonable suspicion" standard, the officer's investigation must be justified by specific articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct. *Gary v. State of Ga*.[7] "Articulable suspicion requires a particularized and objective basis for suspecting that a citizen is involved in criminal activity." *State v. Causey*.[8] Although this suspicion need not meet the higher standard of probable cause, it must be more than mere caprice or a hunch. See *Parker v. State*, supra. In sum, when a traffic stop has been completed and the officer *questions and detains* a suspect for other reasons, he must have reasonable suspicion of other criminal activity. *State v. Blair*.[9]

Here, the evidence fails to show that the investigating officer had specific, articulable facts that could constitute a particularized and objective basis for suspecting that Cabrera was involved in any

---

[3] *Florida v. Jimeno*, 500 U. S. 248, 250 (111 SC 1801, 114 LE2d 297) (1991).
[4] *Ohio v. Robinette*, 519 U. S. 33, 39 (117 SC 417, 136 LE2d 347) (1996).
[5] *State v. Sims*, 248 Ga. App. 277, 278 (546 SE2d 47) (2001).
[6] *Parker v. State*, 233 Ga. App. 616, 617-618 (1) (504 SE2d 774) (1998).
[7] *Gary v. State of Ga.*, 249 Ga. App. 879, 880 (1) (549 SE2d 826) (2001).
[8] *State v. Causey*, 246 Ga. App. 829, 831 (1) (540 SE2d 696) (2000).
[9] *State v. Blair*, 239 Ga. App. 340, 341 (521 SE2d 380) (1999).

criminal activity. As noted by the trial court, the videotape belies Benefield's testimony that Cabrera seemed nervous. On the contrary, Cabrera was polite and fully cooperative. Similarly, the videotape belies Benefield's testimony about any contradiction or confusion as to the couple's driving destination. Cabrera says they are traveling to Hollywood, Florida, and so does Padron. Although the deputy admittedly had a "hunch" that appears likely to have been based on ethnic profiling — a Spanish-speaking driver, originally from Cuba, and traveling southbound from Atlanta to Florida, no evidence showed the existence of a particularized and objective basis for suspecting criminal wrongdoing. See *Payne v. State*.[10] After issuing the warning ticket, Benefield then began a separate and independent investigation having absolutely no connection to the traffic stop. See *State v. Cunningham*.[11] The determinative issue is not whether the consent was freely given but whether the continued detention of Cabrera was based on reasonable, articulable suspicion. See id. Since the deputy's effort to obtain consent occurred after the legitimate basis for the traffic stop had ended, and the deputy lacked a particularized and objective basis to justify continuing to detain Cabrera, the motion to suppress should have been granted. *State v. Hanson*.[12]

2. Cabrera argues that his consent to the deputy's search of his vehicle was not freely and voluntarily given. He claims that in light of evidence of a language barrier or communication problems, the State failed to satisfy its burden of showing that he understood the deputy's question and agreed to permit the search.

The videotape confirms the existence of serious communication problems. On several occasions, Cabrera did not seem to comprehend what Benefield was asking him or responded in such a way as to show that he misunderstood the question. In fact, when Benefield initially asked for consent to search the car, although Cabrera's response is inaudible, Benefield immediately said, "no, no, no," then had to repeat his question. Despite the availability of departmental consent to search waiver forms printed in Spanish, the deputy did not opt to use one. Only after arresting the couple did the deputy become concerned about their difficulty in understanding English, and he radioed ahead for an interpreter. In these circumstances, even had Cabrera been validly detained, the State failed to prove that Cabrera understood what was requested and validly consented to the search of the vehicle. See *Harris v. State*.[13]

As a final matter, even assuming arguendo that Cabrera had ini-

---

[10] *Payne v. State*, 244 Ga. App. 734, 742 (5) (536 SE2d 791) (2000).
[11] *State v. Cunningham*, 246 Ga. App. 663, 665 (541 SE2d 453) (2000).
[12] *State v. Hanson*, 243 Ga. App. 532, 534 (6) (532 SE2d 715) (2000).
[13] *Harris v. State*, 239 Ga. App. 537, 540 (2) (b) (521 SE2d 462) (1999).

tially agreed to the search, the videotape plainly shows that when the deputy began probing inside the trunk, Cabrera did not feel free to leave and go about his business or to controvert the intrusion. Instead, when Cabrera tried to approach his own car, he was sternly commanded to move back at least three separate times. See *Morris v. State*[14] (once consent is legally obtained, it continues until it is revoked or withdrawn). The deputy admitted that after he issued the warning ticket, Cabrera was not free to leave. In these circumstances, it cannot be said that Cabrera did not try to revoke or withdraw his consent or to limit its scope. See *Montero v. State*.[15]

### Case No. A01A1956

Padron contends that her husband did not freely and voluntarily consent to the search. She claims that even if the search had otherwise been valid, it exceeded its lawful scope. Padron argues that the trial court erred in finding that she was a mere passenger for standing purposes to contest the search. Padron also contends that the suitcase was improperly searched because the deputy did not obtain her permission to examine it after being told that it contained clothes belonging to her and her husband.

In Case No. A01A1957, we found that the investigating officer lacked reasonable, articulable suspicion to detain and question Cabrera after the completion of his traffic investigation. Thus, the prolonged detention of Padron and Cabrera was excessive and without legal justification. See *State v. Cunningham*, supra at 666. Even if Padron had lacked standing to contest the search, she certainly had standing to challenge the seizure of her person that occurred in the form of the ensuing detention. *Migliore v. State of Ga.*[16] Padron's motion to suppress should also have been granted. *State v. Hanson*, supra; see *State v. Duran*.[17]

*Judgments reversed. Pope, P. J., and Mikell, J., concur.*

DECIDED MARCH 15, 2002.

*John K. Edwards, Sr., Gregory A. Voyles*, for appellant (case no. A01A1956).
*Vernita L. Lee*, for appellant (case no. A01A1957).

---

[14] *Morris v. State*, 239 Ga. App. 100, 101 (1) (a) (520 SE2d 485) (1999).
[15] *Montero v. State*, 245 Ga. App. 181, 184 (537 SE2d 429) (2000).
[16] *Migliore v. State of Ga.*, 240 Ga. App. 783, 787 (525 SE2d 166) (1999).
[17] *State v. Duran*, 220 Ga. App. 296, 297 (1) (469 SE2d 429) (1996).

*J. David Miller, District Attorney, J. Bennett Threlkeld, Assistant District Attorney*, for appellee.