A03A0904. VAUGHN v. THE STATE.
(588 SE2d 330)

ADAMS, Judge.

Darren Lamont Vaughn was tried in a bench trial and convicted of violating the Georgia Controlled Substances Act and of trafficking in cocaine. He appeals, arguing in his sole enumeration of error that the trial court erred in denying his motion to suppress. For the following reasons, we reject his argument and affirm.

At the suppression hearing, Deputy Brett Dever of the Douglas County Sheriff's Office testified that he was working traffic enforcement on Interstate 20 in Douglas County at about 1:30 p.m. on March 16, 2001. While traveling west on I-20, he saw Vaughn following too close to a vehicle in front of him. Dever moved over to the far right lane in order to stop Vaughn for the violation, but Vaughn slowed down and would not pass Dever. Eventually, after Dever slowed to 50 mph, Vaughn passed him and then Dever also noticed

that Vaughn was not maintaining his lane. Accordingly, Dever stopped Vaughn for two violations: following too closely and failure to maintain his lane. Dever suspected that the driver of the car was intoxicated; thus, he activated the blue lights on his vehicle, which then activated the video recording system on his patrol car. The videotape was played at trial and admitted as evidence.

The recording of the events that followed established that Dever asked Vaughn for his driver's license and for proof of insurance. He also asked Vaughn where he was headed. Vaughn told Dever that he was on his way to Alabama. Dever asked why Vaughn was traveling that day; Vaughn responded that he needed to bring his son back to Norcross and that he needed to return the car. Dever then asked if Vaughn had been drinking and Vaughn said that he had not.

Vaughn gave Dever his driver's license and a copy of a rental agreement. Dever asked whose rental car it was and Vaughn answered: "Shivonne Williams." Dever read the agreement further and saw that it stated: "[O]ther authorized drivers, none." Dever asked if the rental company knew that Vaughn had the car.

Dever also noticed that the rental agreement, which extended until the following day, covered a red Grand Am, although Vaughn was driving an Oldsmobile Alero. Dever saw that the car also had a different tag number from that on the contract. Dever radioed the information regarding the rental agreement to his colleagues; while waiting for the information to come back on the car and on Vaughn's license, Dever wrote up a warning citation.

In the meantime, Dever had called for backup. He testified that he called for backup because he suspected that there was going to be criminal activity involved and he did not want to be working by himself. Dever testified that he thought that Vaughn could be transporting drugs or stolen merchandise, that the vehicle might be stolen, or that there might be foul play in that the vehicle could have been taken from Shivonne Williams.

Dever then returned to the vehicle Vaughn was driving and asked him to step out. He explained to Vaughn that he was issuing him a warning for following too closely and for failure to maintain lane. After he signed the citation, Dever questioned Vaughn about the fact that the rental agreement listed a different vehicle from the one he was driving. Vaughn explained that the cars had been switched by the rental agency because the one listed in the agreement had slick tires. Vaughn also stated, "You can call and verify everything." Dever handed Vaughn the citation, along with his license.

Dever testified that he was concerned about the vehicle because the common practice is that if a rental car is exchanged, the company gives you a new rental agreement. In addition to a different vehicle being listed on the form, Dever testified that he was also suspicious

of Vaughn because Vaughn seemed to be stalling for time in answering various questions. Dever thought that Vaughn was being deceitful; Dever also recalled that Vaughn was nervous and that his skin appeared sweaty. Additionally, Dever noticed that the rental agency had three office locations, all of which were in Mississippi, although Vaughn had told him that he was going to Alabama. Dever stated that he had several questions regarding the arrangement in which Vaughn was involved. He stated that it is common practice in transporting contraband to use rental vehicles to move the merchandise, drugs or weapons. He further stated that I-20 was used regularly to move drugs. Dever testified that he commonly asks for permission to search a vehicle when cars have indicators of criminal activity. Given that there were numerous indicators in this case regarding the identity of the renter and the vehicle, Dever stated that he had several questions.

Dever then told Vaughn there was a bad problem with people trafficking drugs on the interstate, particularly in rental cars. Dever asked Vaughn if he had any drugs, weapons, or large amounts of money and Vaughn denied that he did. Dever then asked Vaughn for permission to search the vehicle and Vaughn consented to a search. Dever also asked Vaughn for permission to search his person and he also consented to that. Dever first searched Vaughn, but did not find any contraband on him.

Dever then searched the vehicle and found a black bag in the trunk. The bag contained a green knapsack, within which was a brick of a substance, later determined to be cocaine. Dever asked Vaughn if the bag was his; Vaughn stated that the bag did not belong to him, but must belong to the owner of the car. Vaughn did concede that the clothes in the bag were his. Dever also saw a prescription bottle in the bag with Vaughn's name on it. Dever arrested Vaughn and read him his *Miranda* rights.

In the ensuing search, an investigator found $10,000 in a CD case in the front passenger seat, which was bound into $1,000 stacks. The stacks consisted of $20 and $100 bills. The officers also searched Vaughn and found $871 on his person. The officers arrested Vaughn and read him his rights. Some time later the tag on the vehicle and the registration came back, which showed that the vehicle was registered to the rental agency Vaughn had described.

In his sole enumeration of error, Vaughn argues that once Dever had issued the warning citations and had determined that Vaughn's license was valid and that there were no outstanding warrants against him, the continued detention and questioning of him were unlawful. Vaughn claims that the information about the rental car was consistent with his answers and his behavior because the rental car was not reported as stolen, it was not due back until the next day,

and Vaughn was driving it in the direction in which he needed to return it. Accordingly, citing several cases including *Simmons v. State*, 223 Ga. App. 781, 782 (2) (479 SE2d 123) (1996), Vaughn argues that Dever had no "reasonable suspicion" of other criminal activity to justify the continued detention and that his consent to search was therefore invalid.

At the suppression hearing, Dever testified that at the conclusion of issuing the traffic citation, he still needed to verify the VIN and verify that the car was an actual rental vehicle and not a stolen car. Dever stated that, based on his experience, he thought that there was a good probability that there was criminal activity involved and he wanted to conduct a search of the vehicle. He further testified that he thought Vaughn might be transporting drugs or stolen merchandise. Additionally, Dever stated that Vaughn could have walked away at that time, but that because of his concerns about the vehicle, it was not going anywhere.

We apply the following standards to our inquiry here:

> When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citations and punctuation omitted.) *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

Using these standards, we conclude that the trial court did not err in denying the motion to suppress.

> An officer who questions and detains a suspect for reasons other than those connected with the original purpose of the stop exceeds the scope of permissible investigation unless he has "reasonable suspicion" of other criminal activity. This reasonable suspicion must be based on more than a subjective, general suspicion or hunch. The detention must be justified by specific and articulable facts which, taken together

with rational inferences from those facts, reasonably warrant the detention, and the trooper must have some basis from which the court can determine that the detention was neither arbitrary nor harassing.

(Citations omitted.) *State v. Gibbons*, 248 Ga. App. 859, 863-864 (2) (547 SE2d 679) (2001). Although Dever had given the citation to Vaughn before requesting his consent to search, Dever was still awaiting confirmation regarding various aspects of the rental car. Accordingly, Dever was still investigating his reasonable suspicion of criminal activity when he sought consent to search. *State v. Sims*, 248 Ga. App. 277, 279 (546 SE2d 47) (2001). Thus, there is no question that the consent was valid.[1] *Henderson v. State*, 250 Ga. App. 278, 281 (551 SE2d 400) (2001) (physical precedent only). Compare *Padron v. State*, 254 Ga. App. 265, 267 (1) (562 SE2d 244) (2002).

*Judgment affirmed. Andrews, P. J., concurs. Barnes, J., concurs and concurs specially.*

BARNES, Judge, concurring specially.

Although I concur fully in the majority opinion, I write separately to stress the difference between this case, in which we are holding that the detention and questioning of a driver were authorized, and *State v. Gibbons*, 248 Ga. App. 859 (547 SE2d 679) (2001), and other cases, in which we held that the detention and questioning of drivers were not authorized. See, e.g., *Berry v. State*, 248 Ga. App. 874 (547 SE2d 664) (2001); *State v. Sims*, 248 Ga. App. 277 (546 SE2d 47) (2001).

In this case, although the deputy initially intended to stop Vaughn for following too closely, the deputy also had reason to suspect that Vaughn might be driving while under the influence and Vaughn's continued detention was based on suspicion that arose from concern about the rental agreement he produced as proof of registration for the car he was driving. Because the rental agreement Vaughn produced was for a different rental car and authorized driver, the deputy had a reasonable basis for suspecting that Vaughn was engaged in criminal activity and thus detaining Vaughn while he investigated.

In the other cases, however, we found, based upon the facts of those cases, that the law enforcement officers had no reasonable basis for continuing the detention and questioning of the drivers once the investigation of the traffic stop was completed, or no investiga-

---

[1] The facts in this case differ from those present in *Ohio v. Robinette*, 519 U. S. 33, 39 (117 SC 417, 136 LE2d 347) (1996), and thus we do not address the precise question raised there.

tion of the traffic stop was initiated. See *Gibbons*, 248 Ga. App. at 863. The outcome of these cases did not turn on the fact that the officers detained the drivers while they engaged in an investigation of possible criminal activity that differed from the reason for the traffic stop. The detentions were unlawful because the officers had no reasonable suspicion of the possible criminal activity before detaining the drivers.

Further, even though one could argue that the deputy had no reason to suspect that Vaughn was engaged in transporting drugs before he asked him to consent to the search of the car, no such suspicion is required. *Burns v. State*, 216 Ga. App. 178, 179-180 (454 SE2d 152) (1995). Further, "[s]o long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required." (Citation and punctuation omitted.) *Burns*, 216 Ga. App. at 179-180. Therefore, if the police questioning was consensual, then questions on an unrelated topic after the conclusion of a valid traffic stop are allowed. *Simmons v. State*, 223 Ga. App. 781, 782-783 (479 SE2d 123) (1996).

Here, as the deputy had a reasonable suspicion arising from the contradictions between the information on the rental agreement and the car Vaughn was driving, Vaughn's continued detention was authorized.

DECIDED OCTOBER 3, 2003.

*Monica T. Myles, Virginia W. Tinkler*, for appellant.
*David McDade, District Attorney, Christopher R. Johnson, Assistant District Attorney*, for appellee.