## A05A2288. WARD v. THE STATE.
### (627 SE2d 862)

RUFFIN, Chief Judge.

Karen Lynn Ward appeals her conviction for possessing methamphetamine, arguing that she was unlawfully detained and patted down by the arresting officer and that the trial court should have suppressed the drugs the officer found. For reasons that follow, we reverse.

When considering the denial of a motion to suppress where the facts are undisputed, we review de novo the trial court's application of the law to the facts.[1] Here, Officer Reuben Beltran testified that while on routine patrol in the early morning hours of July 3, 2003, he noticed a vehicle with the driver's side door ajar parked in front of a closed gas station. He stopped at the gas station and approached the vehicle. He noted two women in the vehicle; Ward was the driver. Initially, Officer Beltran suspected someone might be breaking into the vehicle. When he saw the two women, it also occurred to him that the vehicle might be disabled and the women in need of assistance.

Officer Beltran asked Ward why she was in the parking lot, and she replied that she was looking for a Super Wal-Mart. Officer Beltran asked Ward what route she had taken; when she responded, he told her that she had passed directly by the store. Ward then confessed that she had lied and that she and her passenger were going to a game room behind the gas station.

[23] See *Tice,* supra; *Harris,* supra; *Brewer,* supra.
[1] See *Cain v. State,* 274 Ga. App. 533 (617 SE2d 567) (2005).

Officer Beltran asked both Ward and her passenger for identification and communicated their information to police dispatch. Within five minutes, he was informed that Ward's license was valid and that she had no warrants. Officer Beltran asked her "if she minded stepping out of the vehicle." Ward said she did not mind, stepped out of the vehicle, and met him at the rear of the car. Officer Beltran still had Ward's driver's license at this time, which was approximately 15 minutes after the initial encounter. He testified:

> I asked her if she had any weapons on her person. She stated she did not. I asked her if she minded me patting her down for my safety. She stated she did not. As I began to pat her down, I felt something in her right front pants pocket. At that point I asked Ms. Ward did she have any drugs on her person. She stated she did not. I asked her what that was inside her right front pocket. She just said, "I do not know." I then asked her, "Well, do you mind me searching the inside of your pockets?" She said, "No, I do not mind. You can go ahead and search the inside of my pockets."

Officer Beltran found a plastic bag containing what he believed to be methamphetamine in Ward's right front pocket.

Ward moved to suppress the methamphetamine, and, after a hearing, the trial court denied her motion. Ward was subsequently convicted of possessing methamphetamine. On appeal, Ward contends that Officer Beltran did not have reason to suspect that a crime had been committed and thus was not justified in his continued questioning of her after he determined that her license was valid and there were no warrants for her arrest, but before he had returned her license to her. We agree.

This case graphically illustrates that liberties and rights are always an interpretation away from extinction, unless jealously and zealously guarded. Under Georgia law, there are three distinct tiers of police-citizen encounters:

> consensual encounters; brief investigatory stops, which require reasonable suspicion; and arrests that must be supported by probable cause. In a first-tier encounter, police officers may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave. . . . So long as a reasonable person would feel free to disregard the police and go about

his business, the encounter is consensual and no reasonable suspicion is required.[2]

Ward does not dispute that Officer Beltran's initial contact with her was a first-tier encounter.[3] The relevant question is whether Officer Beltran's request that Ward step out of the vehicle, while he was still in possession of her driver's license, escalated their contact to a second-tier encounter.[4]

When analyzing whether police-citizen contact constitutes a second-tier encounter, we "look to the totality of the circumstances in determining whether a reasonable person would have felt free to leave."[5] In the context of a traffic stop, a subsequent encounter " 'may not be deemed consensual unless the driver's documents have been returned to him.' "[6] One reason for this rule is that a driver cannot legally drive away from the scene of a police-citizen encounter without his or her license.[7] Although this case does not involve a traffic stop, we similarly conclude that Ward would not have felt free to leave when Officer Beltran asked her to step out of her vehicle because he was still in possession of her driver's license.[8] As a result, their contact from this point forward was a second-tier encounter.

In a second-tier encounter, a police officer "may stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity. . . . The officer's action must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."[9] Officer Beltran specifically testified that he did not observe any conduct by Ward that caused him to suspect criminal activity.[10] Moreover, her driver's license was valid

---

[2] (Punctuation and footnote omitted.) *State v. Harris*, 261 Ga. App. 119, 121 (581 SE2d 736) (2003).

[3] See *Johnson v. State*, 268 Ga. App. 426, 430 (4) (602 SE2d 177) (2004).

[4] We note that the State does not address this question in its brief, relying solely on its assertion that Officer Beltran "never did anything to imply that [Ward] was not free to leave, and [Ward] never did anything to indicate she wanted to leave."

[5] *Daniel v. State*, 277 Ga. 840, 843 (2) (597 SE2d 116) (2004).

[6] Id.

[7] Id. at 844, n. 3.

[8] See *Harris*, supra at 122, n. 14 (State's contention that citizen was free to leave motel room where police-citizen encounter occurred undermined by police officer's taking of citizen's identification and leaving room).

[9] (Punctuation omitted.) Id. at 121-122.

[10] Compare *In the Interest of A. A.*, 265 Ga. App. 369, 372 (1) (593 SE2d 891) (2004) (officer had reasonable suspicion necessary for second-tier encounter when, upon approaching stopped vehicle, he smelled alcohol and noted youth of occupants and driver's bloodshot eyes); *Vaughn v. State*, 263 Ga. App. 536, 537-540 (588 SE2d 330) (2003) (officer had reasonable suspicion of criminal activity when driver provided rental contract not in his name for vehicle different than

and she had no outstanding warrants. His only basis for continuing to question Ward was that she initially lied to him about her reason for being in the parking lot. We have held that an officer does not have reasonable, articulable suspicion of a crime when a person is merely nervous in police presence[11] or stands in a known drug trafficking area in very cold weather for an hour.[12] Similarly, we cannot find that Ward's lie in this case authorized Officer Beltran to detain her. There is no evidence that Officer Beltran believed the lie itself related to criminal activity or that further investigation of the lie might yield evidence of criminal conduct. Rather, he was concerned by the mere fact that Ward had lied. Meaningless inconsistencies in answers to police questions, however, do not give rise to reasonable, articulable suspicion.[13] Under these circumstances, Officer Beltran lacked a reasonable, articulable suspicion that would justify a second-tier encounter. Because Ward's continued detention was unjustified, Officer Beltran's subsequent search of her was also unjustified.[14]

The State argues that Ward's consent validates the search. But consent cannot validate a search if the consent is the product of a wrongful detention.[15] Where there is "no significant lapse of time between the unlawful detention and the consent, . . . no intervening circumstances dissipated the effect of the unlawful detention, and . . . the [officer's] conduct had no arguable legal basis" the evidence seized must be suppressed.[16] Here, nothing had happened to dissipate the effect of the unlawful detention or to otherwise change Ward's belief that she was not free to leave.[17] And Officer Beltran's decision to detain Ward had no arguable legal basis. Under these circumstances, the evidence seized in the ensuing search of Ward's person should have been suppressed.[18] Because the only evidence supporting the trial court's finding of guilt was the improperly seized methamphetamine, Ward's conviction must be reversed.[19]

---

the one he was driving and rental contract was from company in Mississippi but driver said he was going to Alabama).

[11] See *Harris*, supra at 122; *Peters v. State*, 242 Ga. App. 816, 817 (1) (531 SE2d 386) (2000).

[12] See *State v. King*, 227 Ga. App. 466, 468-469 (489 SE2d 361) (1997).

[13] See *Migliore v. State*, 240 Ga. App. 783, 786 (525 SE2d 166) (1999) (no reasonable, articulable suspicion of drug activity created by meaningless inconsistencies in driver's and passenger's statements); compare *Jones v. State*, 259 Ga. App. 849, 852 (578 SE2d 562) (2003) (reasonable, articulable suspicion of criminal activity exists where driver lies about hiding something under vehicle seat when officer observed driver's actions).

[14] See *State v. Gibbons*, 248 Ga. App. 859, 864 (2) (547 SE2d 679) (2001).

[15] See *Pledger v. State*, 257 Ga. App. 794, 797 (572 SE2d 348) (2002); *Brown v. State*, 188 Ga. App. 184, 187 (372 SE2d 514) (1988).

[16] *Brown*, supra.

[17] See *Baker v. State*, 277 Ga. App. 520 (627 SE2d 145) (2006).

[18] See *Baker v. State*, 256 Ga. App. 75, 79 (1) (567 SE2d 738) (2002); *Brown*, supra.

[19] See *Chinnis v. State*, 240 Ga. App. 518, 520 (1) (523 SE2d 924) (1999).

*Judgment reversed. Johnson, P. J., and Barnes, J., concur.*

DECIDED FEBRUARY 28, 2006.

*Steven E. Lister, Scott W. DePlonty*, for appellant.
*Tommy K. Floyd, District Attorney, Thomas R. McBerry, Assistant District Attorney*, for appellee.