## A07A0929. THE STATE v. LANES.
### (651 SE2d 456)

SMITH, Presiding Judge.

The State appeals the grant of Jamal Lanes's motion to suppress evidence obtained in a search of his vehicle and person. The trial court correctly found that the officer lacked a reasonable, articulable suspicion to ask Lanes to get out of his car before asking for permission to search, and we therefore affirm.

We must follow three principles when reviewing a trial court's order concerning a motion to suppress evidence:

> First, the judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citations and punctuation omitted.) *State v. Hester*, 268 Ga. App. 501, 502 (602 SE2d 271) (2004). So viewed, the evidence shows that an officer of the City of Decatur Police Department was on patrol in the city when she observed a car parked in a closed gas station at 2:45 a.m. She approached the car and observed the driver, later identified as Lanes, "slumped down" or "leaning forward" and looking at a contact lens case in his hand. The officer tapped on the window, and Lanes "slowly looked over at" her; she tapped again, and he rolled down the window. When she asked what he was doing, he told her that he had just come from a nightclub and was "having problems with his contacts and wanted to let his eyes rest." His speech was "very, very slow," and his eyes were red and watery. She did not, however, smell any odor of alcohol. She asked Lanes if he had been smoking marijuana, and he denied it, although he said he had had a couple of beers at the nightclub. The officer asked for Lanes's driver's license, which she checked and found no outstanding warrants. She then asked him to step out of the car. After "a minute, no more than two," the officer asked Lanes for permission to search his person and vehicle, which he granted.

After taking a recess to examine the relevant case law, the trial court granted the motion to suppress from the bench, explaining the ruling at some length. The trial judge found that Lanes gave a "reasonable explanation" for his red and watery eyes, noting explicitly, "I don't find anything else . . . there was nothing there that I could

see that would justify her asking him to step out of the car and taking his license from him." "Credibility of witnesses and the weight to be given their testimony is a decision-making power that lies solely with the trier of fact. The trier of fact is not obligated to believe a witness even if the testimony is uncontradicted and may accept or reject any portion of the testimony." (Citation and punctuation omitted.) *State v. Brown*, 278 Ga. App. 457, 460 (629 SE2d 123) (2006). This court "cannot, and will not, usurp the authority of the trial judge to consider such factors as demeanor and other credibility-related evidence in reaching its decision." Id. at 461.

> At least three types of police-citizen encounters exist: verbal communications involving no coercion or detention; brief "stops" or "seizures" that require reasonable suspicion; and "arrests," which can only be supported by probable cause. A first-tier encounter never intrudes upon any constitutionally protected interest, since the purpose of the Fourth Amendment is not to eliminate all contact between police and citizens, but simply to prevent arbitrary and oppressive police interference with the privacy and personal security of individual citizens. On the other hand, a second-tier encounter may violate the Fourth Amendment if the officer briefly "stops" or "seizes" a citizen without an articulable suspicion. Articulable suspicion requires a particularized and objective basis for suspecting that a citizen is involved in criminal activity.

(Citations omitted.) *Brittian v. State*, 257 Ga. App. 729, 731 (572 SE2d 76) (2002).

The State acknowledged that, once the officer asked Lanes to step out of the car, the encounter became a "tier two" *Terry* stop, requiring a reasonable articulable suspicion of criminal conduct. Here, as explained in *Ward v. State*, 277 Ga. App. 790 (627 SE2d 862) (2006), the officer must have a "particularized and objective basis for suspecting the persons are involved in criminal activity. The officer's action must be justified by specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (Citation, punctuation and footnote omitted.) Id. at 792.

Those facts are lacking in this case, as the trial court specifically found Lanes's explanation that his contacts were bothering him to be reasonable. His explanation was further bolstered by the fact that the officer found him with the contact lens case in his hand. Sluggish movement in the early hours of the morning is, as the trial court found, not unusual. Lanes had committed no traffic violation, his

license was valid and the officer found no outstanding warrants, and he did not smell of alcohol. Another officer had arrived on the scene "almost immediately" after the first officer pulled into the gas station, and the officer was not in fear for her safety. The officer therefore lacked justification to detain Lanes, and his subsequent search was likewise unjustified. *Ward*, supra, 277 Ga. App. at 793.

Moreover, "consent cannot validate a search if the consent is the product of a wrongful detention." (Citations and footnote omitted.) *Ward*, supra, 277 Ga. App. at 793. Here, Lanes's consent "was a direct product of the preceding illegality." *State v. Scott*, 279 Ga. App. 52, 56 (3) (630 SE2d 563) (2006). Only a minute or two elapsed between the stop and the search of Lanes and his car, and no circumstances or events intervened "to purge the primary taint" of the illegal detention. Id. See also *Ward*, supra, 277 Ga. App. at 793. Accordingly, we conclude that the trial court properly granted Lanes's motion to suppress.

*Judgment affirmed. Barnes, C. J., and Miller, J., concur.*

DECIDED AUGUST 21, 2007 — 

*Gwendolyn Keyes Fleming, District Attorney, Leonora Grant, Assistant District Attorney*, for appellant.
*September Guy, Gerard B. Kleinrock*, for appellee.