**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 21, 2014**

# In the Court of Appeals of Georgia

A14A1200. MATTHEWS v. THE STATE.

PHIPPS, Chief Judge.

Jamahl Matthews appeals his convictions for trafficking in cocaine, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon. He contends that the trial court erred by denying his motion to suppress, arguing that the arresting officer violated his Fourth Amendment rights by impermissibly detaining and questioning him after the officer had "returned Mr. Matthews' documents to him and given him a warning[,] [and] [t]he traffic stop was over at that point." We agree, and reverse.

"On appeal from a denial of a motion to suppress, this Court must construe the evidence most favorably to uphold the ruling of the trial court. [T]he trial court's application of law to facts which are undisputed is subject to de novo review."[1]

The record showed the following. In May 2009, the trial court held a hearing on Matthews's motion to suppress. A sergeant with the criminal interdiction unit of the Georgia State Patrol was the only witness at the hearing. The officer testified that he had 15 years of law enforcement experience, and that he taught an interdiction program on the state and federal levels. He testified that he had received training "as far as travel patterns pertaining to drugs," where drugs may be coming from, and the routes taken to transport drugs; he added that Atlanta was the "number three [drug] distribution center in the United States," and that Interstate 20 was a major drug corridor. The officer testified that "borrowing somebody else's car" was an occurrence "we see quite frequently" in the drug trade, permitting "the plausibility of saying, well, it's not my car, so therefore, what's in [the] car doesn't belong to me."

The officer testified that on July 7, 2008, around 4:00 p.m., he was patroling the eastbound lanes of Interstate 20 in Morgan County when he observed a Toyota

---

[1] *Jones v. State*, 253 Ga. App. 870 (560 SE2d 749) (2002) (citations and footnoted omitted).

Camry vehicle being driven with the "tag bracket . . . covering up the expiration and the name of [the] state." The officer stopped the vehicle; Matthews was the vehicle's sole occupant. The officer asked Matthews to exit the vehicle so that he could show Matthews the tag obstruction. As they conversed, Matthews informed the officer that he did not own the vehicle, and that it belonged to his mother-in-law. As the officer asked Matthews for his license, registration, and insurance, he observed that Matthews appeared "extremely nervous," exhibiting a "tick of rubbing his head," and that the "underling of his eye . . . [was] just trembling." The officer testified that Matthews was "unusually nervous."

Matthews told the officer that he had traveled to Atlanta to visit a cousin, and that he had been there for three days. The officer did not see any luggage in the vehicle, and he asked Matthews about that. Matthews told him that he had left his clothes in Atlanta, explaining that he was thinking about returning to Atlanta the following weekend. The officer testified:

> [I]n and of itself it's not a crime that he left his luggage in Atlanta, but . . . he first of all basically tried to deny it in the fact that he had the same clothes on for a period of time and when he saw that I did not believe I said you wore those same clothes for three days? He changed his story to I left my clothes in Atlanta. . . . And that's where it started going downhill for me to disbelieve his itinerary.

3

Matthews had told the officer that he worked in South Carolina, and the officer testified that he had become suspicious that Matthews was on a "turnaround trip," that he was "coming out of Atlanta and has not spent a great deal of time up there." In the officer's experience, it was "not plausible that someone would travel six and a half, seven hours, visit three days with a cousin, and leave all their clothes, toothbrush, and everything in Atlanta to come back and stay in South Carolina for an undetermined period of time."

The officer walked back to his vehicle, called a K-9 handler who was located less than five minutes away, and ran a check on Matthews's driver's license and tag registration. The officer then exited his vehicle, and gave Matthews "all of his items back, his driver's license, and . . . wrote him a warning for his improper tag display." The officer affirmed that "the traffic stop was over at that point." However, the officer continued to detain Matthews and told him that he suspected that Matthews was lying about his itinerary, that Matthews had driven to Atlanta that morning, and that he had drugs in the vehicle. The officer asked Matthews for permission to search the vehicle, but Matthews did not consent. The officer told Matthews that a K-9 was en route, and within moments, "the K-9 car arrived."

The K-9 officer deployed the dog around the vehicle, and the dog gave a positive alert. During the positive alert, Matthews told the officer who had stopped him that he had cocaine in the vehicle. The officer searched the vehicle and located in the center armrest approximately 55 grams of cocaine, a loaded pistol, and digital scales. The officer arrested Matthews.

The officer testified that during his initial conversation with Matthews, based on the following facts, he believed that he had developed reasonable suspicion to detain Matthews beyond the conclusion of the investigation that warranted the stop: (1) Matthews was driving a borrowed vehicle; (2) Matthews was driving on Interstate 20, which the officer believed to be a major drug corridor; (3) Matthews was traveling six and a half, seven hours but had no luggage in the vehicle; (4) Matthews's claim that he had been "away from his family" for three days was implausible; (5) Matthews's claim that he had left his luggage in Atlanta was "not something that a prudent person would do"; and (6) Matthews was extremely nervous. The trial court denied Matthews's motion to suppress.

> Claims that [an investigative] detention was unreasonably prolonged are of two sorts. In some cases, a detention is prolonged beyond the conclusion of the investigation that warranted the detention in the first place[. ] . . . In other cases, the detention is not prolonged beyond the

5

conclusion of the investigation that originally warranted the detention, but it is claimed that the investigation took too long, perhaps because the officer spent too much time inquiring about matters unrelated to the investigation.[2]

1. Matthews does not question the efficacy of the stop, and the state concedes that the investigation that warranted the stop had ended after the officer had returned Matthews's documents and issued a warning citation. Therefore, we do not determine those issues here.[3] Matthews questions the propriety of his detention after the officer had returned his documents to him and issued a warning citation. Matthews argues that because these latter acts ended the investigation that had justified the stop, at that point in time, the officer had no right to detain him any longer, ask him questions, or search the vehicle, as the officer lacked any "particularized and objective basis to further investigate for illicit drug activity."

---

[2] *Rodriguez v. State*, 295 Ga. 362, 369 (2) (b) (761 SE2d 19) (2014) (citation omitted).

[3] See, e. g., *Allen v. State*, _ Ga. App. _ (_ SE2d _) (Case No. A14A0297, decided July 16, 2014) (determining that investigation that justified traffic stop had ended after officer had completed a written warning citation even though officer had not immediately given the completed warning citation to the driver; at that point, officer had not formed any reasonable articulable suspicion of other criminal activity to justify further detention or questioning of driver, yet officer continued to detain driver and began a drug investigation).

6

"[T]o justify additional questioning of a driver and the search of his vehicle following a routine traffic stop, an officer must have reasonable suspicion of criminal conduct."[4]

> To satisfy this "reasonable suspicion" standard, the officer's investigation must be justified by specific articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct. Articulable suspicion requires a particularized and objective basis for suspecting that a citizen is involved in criminal activity. Although this suspicion need not meet the higher standard of probable cause, it must be more than a mere caprice or a hunch. In sum, when a traffic stop has been completed and the officer questions and detains a suspect for other reasons, he must have reasonable suspicion of other criminal activity.[5]

A police officer may lengthen the detention for further questioning beyond that related to the initial stop if he has an "objectively reasonable and articulable suspicion illegal activity has occurred or is occurring."[6]

> To determine whether a reasonable articulable suspicion exists, courts must look to the totality of the circumstances. Based upon that

---

[4] *Padron v. State*, 254 Ga. App. 265, 268 (1) (562 SE2d 244) (2002) (citation and footnote omitted).

[5] *State v. Whitt*, 277 Ga. App. 49, 50 (625 SE2d 418) (2005) (citation and emphasis omitted).

[6] Id. at 49 (citation omitted).

whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity. Among the circumstances for the court to analyze are objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers.[7]

"The State bears the burden of proving that the search of the car was lawful, and to carry this burden, the State must show that it was lawful to detain [Matthews] until the time the drug dog indicated the presence of drugs."[8]

In this case, the state did not meet its burden. The officer stated that he believed that he had developed reasonable suspicion to detain Matthews beyond the conclusion of the investigation that warranted the stop because, among other things, the officer observed that Matthews was extremely nervous, was driving a borrowed vehicle, and was traveling out of state but had no luggage. But this court has held that similar facts did not provide "a particularized and objective basis for suspecting that

---

[7] *State v. Thompson*, 256 Ga. App. 188, 189-190 (569 SE2d 254) (2002) (citations and punctuation omitted).

[8] *Dominguez v. State*, 310 Ga. App. 370, 372 (714 SE2d 25) (2011) (citation omitted).

8

[a driver] was, or was about to be, engaged in criminal activity."[9] And although Interstate 20, like any other route, may be traveled upon to transport illegal substances, many law-abiding citizens routinely utilize that major thoroughfare for legal purposes, such as travel to school and work;[10] there was no testimony that Matthews's destination, like the city of his origination, was a known drug source.[11] Moreover, as Matthews told the officer that he had visited a cousin in Atlanta, Matthews had not been "away from family," and the officer's contrary conclusion was not supported by the evidence.

---

[9] *Payne v. State*, 244 Ga. App. 734, 743 (4), (5) (536 SE2d 791) (2000) (driver's nervousness combined with fact that he was driving a rental car, that car had been rented out of Florida by another individual, and that driver had no luggage, did not support a reasonable suspicion of drug activity) (citation omitted).

[10] See e. g. *Thompson*, supra at 190 ("Although laundry detergent and dryer sheets can be used to mask the odor of an illegal substance, they are themselves legal substances that can be used for a legal purpose and thus do not justify the officer's further detention of [appellant]" where such odor was coupled with extraordinarily nervous and defensive behavior).

[11] Compare *Giles v. State*, 284 Ga. App. 1, 2 (1) (642 SE2d 921) (2007) ("red flag" indicators that appellant was engaged in drug smuggling criminal activity included, inter alia, a trooper's training and knowledge that Interstate 20, where appellant was stopped, was a "known drug route," and that the appellant's city of origination (Houston) and city of destination (Atlanta) were known drug sources).

The evidence also showed that when Matthews was explaining the absence of luggage in the vehicle, he initially told the officer that he had worn the same clothes for three days, but he later stated that he had left his clothes in Atlanta. But as this court has held, "[m]eaningless inconsistencies in answers to police questions . . . do not give rise to reasonable, articulable suspicion."[12] In *Ward v. State*,[13] although the driver had lied to police about the reason for her presence at a certain location, this court held that the mere fact that the driver had told the lie did not give rise to reasonable, articulable suspicion of criminal activity.[14] Even if Matthews did wear the same clothes for three days, or make a decision (that the officer believed was unwise) to leave his clothes in Atlanta with a relative; and even if Matthews's statements to the officer about his clothing were inconsistent; that behavior and those statements did not constitute either illegal or sufficiently unusual conduct that provided any objectively reasonable basis for suspecting that Matthews was, or was about to be,

---

[12] *Ward v. State*, 277 Ga. App. 790, 793 (627 SE2d 862) (2006) (footnote omitted).

[13] Supra.

[14] Id.; cf. *Jones v. State*, 259 Ga. App. 849, 852 (578 SE2d 562) (2003) (reasonable, articulable suspicion of criminal activity existed where driver exhibited nervous behavior in addition to police officer's clear observation that driver appeared to be hiding something under vehicle seat and driver denied this behavior).

10

engaged in criminal activity.[15] Accordingly, the officer was not authorized to detain Matthews beyond the conclusion of the investigation of the traffic infraction.[16]

Under the totality of the circumstances, the evidence seized in the ensuing search of Matthews's vehicle should have been suppressed by the trial court, and Matthews's conviction, which was based on the illegally seized contraband, must be reversed.[17]

*Judgment reversed. Ellington, P. J., concurs. McMillian, J., concurs in judgment only.*

---

[15] See generally *Ward*, supra; *Migliore v. State*, 240 Ga. App. 783, 786 (525 SE2d 166) (1999).

[16] See *Ward*, supra; *Migliore*, supra.

[17] See *Ward*, supra.; *Payne*, supra; *Migliore*, supra.